# 23-1207

## United States Court of Appeals
## for the
## Second Circuit

UNIVERSITAS EDUCATION, LLC,

*Plaintiff-Appellant,*

v.

BENISTAR, BENISTAR ADMIN SERVICES, INC., TPG GROUP INC,
MOONSTONE PARTNERS, LLC, ALLIANCE CHARITABLE TRUST, PHOENIX
CHARITABLE TRUST, CARPENTER CHARITABLE TRUST, DONALD
TRUDEAU, MOLLY CARPENTER, JANE DOE, ENTITIES UNDER CONTROL
OF MOLLY CARPENTER AND/OR DONALD TRUDEAU AND ENTITIES
UNDER CONTROL OF JUDGMENT DEBTORS, GRIST MILL PARTNERS, LLC,
GREYHOUND PARTNERS, LLC, 1&3 MILL POND PARTNERS, LLC, SEIR
HILL PARTNERS, LLC, BIRCH HILL PARTNERS, LLC, CAROLINE MECKEL,
STEVEN MECKEL, ATLANTIC CHARITABLE TRUST,AVON CHARITABLE
TRUST, CARPENTER FINANCIAL GROUP, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court for
the District of Connecticut

## PRINCIPAL BRIEF FOR PLAINTIFF-APPELLANT

Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St., 4th Floor, Alexandria, VA 22314
(202) 674-1450
jmanson@jmansonlaw.com

*Counsel for Plaintiff-Appellant*

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, Appellant Universitas Education, LLC hereby states that it has no parent corporation and no publicly- held corporation owns 10% or more of its stock or units.

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................... 1

**JURISDICTIONAL STATEMENT** ..................................................... 10

**STATEMENT OF THE ISSUES** ......................................................... 11

**STATEMENT OF THE CASE** ............................................................. 12

    **I.**   **The Underlying Arbitration Award and Confirmation.** ............ 12

    **II.**   **Post-Judgment Discovery** .................................................... 14

    **III.**   **The Turnover Proceedings** .................................................. 15

    **IV.**   **The Entities at Issue** ............................................................ 17

        a.   BASI ................................................................................ 17

        b.   TPG Group, Inc. .............................................................. 18

        c.   Grist Mill Partners ........................................................... 19

        d.   The Charitable Trusts ...................................................... 19

        e.   The Limited Liability Company Appellees ..................... 20

        f.   The Individual Appellees ................................................. 22

    **V.**   **Criminal Prosecution Concerning the Stolen Insurance Proceeds.** ... 23

    **VI.**   **The District Court Proceedings.** ......................................... 24

**SUMMARY OF ARGUMENT** ............................................................. 27

**STANDARD OF REVIEW** ................................................................... 30

**ARGUMENT** ......................................................................................... 32

    **I.**   **The District Court Erred in Dismissing the Complaint and Amended Complaint because the District Court Improperly Found that Res Judicata Barred all the Claims Against the Appellees.** ............................... 33

        a.   Legal Standard for Res Judicata Claims Under New York Law .............. 33

        b.   Res Judicata Applicability to New York Turnover and Alter Ego Proceedings. ................................................................................. 36

        c.   The District Court Erred in Finding that all of Universitas' Claims were Based on the Same Transaction or Series of Transactions and that Its Claims Against the Appellees were Barred. .................................................. 39

d.      The District Court Erred by Failing to Analyze whether Bringing Claims Against Appellees in the Turnover Proceedings would have Comported with Party Expectations. .......................................................................... 43

1.   *The Court Erroneously Dismissed BASI based on Res Judicata because it would not have Comported with Party Expectations to Include BASI.*...... 43

2.   *The Court Erroneously Dismissed TPG based on Res Judicata because it would not have Comported with Party Expectations to Include TPG.* ...... 44

3.   *The Court Erroneously Dismissed 1 & 3 Mill Pond Partners based on Res Judicata because it would not have Comported with Party Expectations to Include 1 & 3 Mill Pond.*.............................................................. 45

4.   *The Court Erroneously Dismissed Grist Mill Partners based on Res Judicata because it would not have Comported with Party Expectations to Include Grist Mill Partners.* ........................................................... 46

5.   *The Court Erroneously Dismissed the Charitable Trusts based on Res Judicata because it would not have Comported with Party Expectations to Include the Charitable Trusts.* ....................................................... 47

6.   *The Court Erroneously Dismissed Greyhound Partners, Seir Hill Partners, and Birch Hill Partners based on Res Judicata because it would not have Comported with Party Expectations to Include Them.* ................... 48

7.   *The Court Erroneously Dismissed Molly Carpenter and Donald Trudeau based on Res Judicata because it would not have Comported with Party Expectations to Include them as Alter Egos.* ....................................... 51

e.   The District Court Erred because it Applied *Res Judicata* too Rigidly in Contravention of New York Law. ................................................... 52

f.   The District Court Erred in Finding that the Southern District of New York would have exercised jurisdiction over the Alter Ego and other Equitable Claims in the Complaint and Amended Complaint.......................................... 56

II.    **The District Court Erred in Holding that Universitas Could not Bring a Claim for Constructive Trust.** ............................................................. 57

**CONCLUSION** ................................................................................ 59

## <u>TABLE OF AUTHORITIES</u>

*Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516 (S.D.N.Y. 2014)..................................................................................................38, 51

*Amid v. Chase*, 720 F. App'x 6 (2d Cir. 2017)..........................................................31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 54 (2007)........................................................30

*Boucher v. Dramstad*, 522 F. Supp. 604 (D. Mont. 1981)........................................53

*Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150 (2d Cir. 2017)..................31

*Burka v. New York City Transit Auth.*, 32 F.3d 654 (2d Cir. 1994).......................34

*Cadle Co. v. Gabel*, 7944 A.2d 1029 (Conn. App. 2002)...................................30, 58

*Cornwall Mgmt. Ltd v. Kambolin*, 2015 NY Slip Op 30740(U) (Sup. Ct. N.Y. Cty. Apr. 19, 2015).......................................................................................................38

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S 394 (1981)...................................28

*First Horizon Bank v. Moriarty-Gentile*, No. 10-CV-00289 (KAM)(RER), 2015 U.S. Dist. LEXIS 165695 (E.D.N.Y. 2015)......................................................37, 56

*Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105 (2d Cir. Nov. 29, 2021)................................................................................34

*Gulack v. Gulack*, 620 A.2d 181 (1993).............................................................29, 58

*Hansen v. Miller*, 52 F.4th 96 (2d Cir. 2022)......................................................36, 53

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019)......................................30

*Hishon v. King and Spalding*, 467 U.S. 69 (1984)..................................................30

*In re Alfonzo T.*, 79 A.D. 3d 1724 (N.Y. App. Div. 2010)......................................35

*In re Ditech holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998 (Bankr. S.D.N.Y. Oct. 28, 2021).........................................................................................30

*Ins. Co. of State of Pennsylvania v. HSBC Bank USA*, 10 N.Y. 3d 32, 882 N.E. 2d 381 (2008)................................................................................................35

*Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956 (N.Y. App. Div. 2021)...33

*Katt v. Dykhouse*, 983 F.3d 690 (6th Cir. 1992).........................................................42

*Lapegna v. Lapegna*, No. CV 216052641S, 2022 Conn. Super. LEXIS 2141 (Conn. Super. Sept. 22, 2022)....................................................................................58

*Mason v. Mason*, No. CV195021013S, 2020 Conn. Super. LEXIS 903 (Conn. Super. Aug. 6, 2020)..............................................................................................58

*Matter of B.Z. Chiropractic, P.C. v. Allstate Ins. Co.*, 197 A.d.3d 144 (N.Y. App. Div. 2021)....................................................................................................34

*Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95 (2d Cir. 2022)....................................31

*O'Leary v. Wells*, No. CV126026336, 2012 Conn. Super. LEXIS1802 (Conn. Super. July 16, 2012).......................................................................................58

*O'Connor v. Pierson*, 568 F.3d 64 (2d Cir. 2009)..............................................36, 56

*People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1 (N.Y. 2008)............34

*Reed v. McCready*, 2014 Conn. Super. LEXIS 1230 (Conn. Super. Ct. 2014)...24, 57

*Reilly v. Reed*, 379 N.E. 172 (N.Y. 1978)..............................................28, 36, 53, 56

*Ren-Cris Litho, Inc. v. Vantage Graphics*, No. 96-7802, 1997 U.S App. LEXIS 3333 (2d Cir. Feb. 24, 1997)..........................................................................38, 41

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)....................................................28

*Saud v. Bank of New York*, 929 F. 2d 916 (2d Cir. 1991)....................................35, 50

*Sheldon v. Khanal*, 96 F. App'x 737, 738 (2d Cir. 2010).........................................31

*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85 (2d Cir. 2018)....................................31

*Simmons v. Trans Express, Inc.*, 16 F.4th 357 (2d Cir. 2021)...........27, 31, 34, 35, 40

*Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 170 N.E.3d 733 (2021)...........36, 53

*Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007)...................................30

*Smith v. Russell Sage Coll.*, 54 N.Y. 2d 185, 429 N.E. 2d 746 (1981)....................35

*Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895 (E.D.N.Y. Mar. 31, 2022)..........................................................34

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002)......................................31

*Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669 (S.D.N.Y. July 2, 2020).......................................37

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................30-31

*Theatre Row Phase II Assocs. v. H & I Inc.*, 443 B.R. 592 (S.D.N.Y. 2011) .......................................................................................................37, 38, 41, 42

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221 (2d Cir. 2009).........38

*Unifoods S.A. de C.V. v. Magallanes*, No. CV206047191S, 2021 Conn. Super. LEXIS 1299 (Conn. Super. Aug. 12, 2021)............................................................58

*United States v. Town of Bolton Landing*, 946 F. Supp. 162 (N.D.N.Y. 1996)..28, 36

*United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020)............................................1

*See United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013)..................................1

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016).................................................................................................................*passim*

*Universitas Educ., LLC v. Avon Capital, LLC*, No. No. 22-6038, 2022 U.S. App. LEXIS 35300 (10th Cir. Dec. 21, 2022).....................................................................5

*Universitas Educ., LLC v. Benistar et al.*, No. 3:20-cv-00738 (KAD), 2021 U.S. Dist. LEXIS 47804 (D. Conn. Mar. 15, 2021)...........................................................7

*Universitas Educ., LLC v. Benistar et al.*, No. 3:20-cv-00738 (KAD) 2023 U.S. Dist. LEXIS 133837 (D. Conn. Aug. 2, 2023)................................................................22

*Universitas Educ., LLC v. Grist Mill Capital, LLC et al.*, Nos. 21-2690(L), 21-2691, 2023 U.S. App. LEXIS 4257 (2d Cir. Feb. 23, 2023)..........................................5, 54

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988 (S.D.N.Y. Mar. 23, 2016)......................................................3-4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435 (S.D.N.Y. Jan 5, 2015)......................................................9, 16, 56

*Universitas Educ., LLC v. Nova Grp., Inc.* No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014)......................................................3, 4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014)...................................................*passim*

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014)......................................................12, 13

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)..............................................2, 15, 52

*Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013)..........................................................................................3

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013)...........................................................4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902 (S.D.N.Y. May 21, 2013).........................................................3

*Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000)......................9, 28, 35

*Walker v. Fitzpatrick*, 814 F. App'x 620 (2d Cir. 2020)...........................................31

*Wm. Passalacqua Builders, Inc. v. Resnick Developers., Inc.*, 933 F.2d 131 (2d Cir. 1991)................................................................................................................37-38

*Xiao Yang Chen v. Fischer*, 843 N.E.2d 723 (N.Y. 2005)..................................27, 35

## **Statutes**

28 U.S.C. §1332 (2018)...........................................................................................10

28 U.S.C. § 1291 (2018)...........................................................................10

Conn. Gen. Stat. § 3-673c......................................................................26

N.Y. C.P.L.R. § 5225.......................................................36, 37, 38, 39, 56

## **Rules**

Fed. R. App. P. 26.1..................................................................................i

Fed. R. Civ. P. 12(b)(6)...................................................................*passim*

## PRELIMINARY STATEMENT

Daniel E. Carpenter ("Carpenter"), who was educated at Bowdoin College and the University of Connecticut Law School, has dedicated his life to operating a criminal conspiracy to, *inter alia*, defalcate and launder $30 million of insurance proceeds that rightfully belonged to Appellant Universitas Education, LLC ("Universitas" or "Appellant"). This resulted in fifty-seven (57) felony convictions for Carpenter,[1] who continues to fight to prevent Universitas from recovering the stolen assets over fourteen years after they were first stolen. This is in addition to other criminal convictions related to fraud in the operation of 1031 Exchange programs.[2]

As a result of this theft, Universitas obtained an arbitration award and subsequent judgments against Carpenter and certain shell companies under his control. After the arbitration award was confirmed, judgments were entered against Mr. Carpenter in his personal capacity, as well as several of his shell entities, which were direct recipients of the stolen insurance proceeds in two turnover proceedings. To date, less than $6 million of the $30 million in stolen funds have been recovered, all the while Mr. Carpenter maintains $26 million in face value of life insurance

---

[1] *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020), *cert. denied* 141 S. Ct. 820.

[2] *See United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013).

policies on his life; an extravagant beach home purchased with the stolen funds; and a portfolio of insurance policies purchased entirely with funds rightfully belonging to Universitas, which upon information and belief has a value of over $6 million.

The Appellees, all of whom are affiliates of Mr. Carpenter or entities that are under his control, are complicit in a decade-long war of attrition against Universitas, which has the sole purpose of preventing Universitas from realizing the benefits of its arbitration and litigation victories. Mr. Carpenter, with the help of the Appellees and other shell companies, has spent the last eleven years delaying and proliferating post-judgment proceedings in this litigation through wantonly bad-faith, vexatious, and dilatory litigation tactics. The Appellees are among the *hundreds* of shell companies whose primary purpose is to shield assets from his creditors.[3] Considering the myriad of entities under Mr. Carpenter's control, Universitas, due to financial limitations, could not possibly be expected to name all the entities as parties in these proceedings. This is particularly true in light of the fact that the money Mr. Carpenter stole was the principal funding for Universitas and its charitable work, which Universitas has still largely been unable to institute as a result of Mr. Carpenter's actions.

---

[3] *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *30 (S.D.N.Y. Nov. 20, 2013)

2

Since then, Mr. Carpenter's strategy has been to drown Universitas with pleadings and motions, many of which are frivolous. The extent of Carpenter's frivolous motion practices is astounding—the original proceeding in the United States District Court for the Southern District of New York was initiated ten years ago as an action to confirm an arbitration award and "should have been an ordinary and straightforward action to confirm and collect upon an arbitration award."[4] That proceeding has devolved into a series of ongoing protracted legal disputes in numerous courts—there are currently five separate collection actions in four federal district courts (and multiple appeals therefrom), all concerning the enforcement of Universitas' judgment. This litigation has been "necessitated by [Carpenter's] relentless efforts . . . to prevent Universitas from realizing the benefit of its arbitration victory."[5]

Through the systematic abuse of the litigation process, by, *inter alia*, refusing to produce post-judgment discovery and engaging in frivolous motions practice,[6]

---

[4] *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902, at *35 (S.D.N.Y. May 21, 2013), *adopted* 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013).

[5] *Universitas Educ., LLC v. Nova Grp., Inc.* No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014).

[6] *Universitas Educ., LLC v. Nova Grp., Inc.* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142901, at *25 (S.D.N.Y. May 21, 2013), *adopted by* 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013) ("In addition, [Carpenter's] claim that the insurance trustee of Charter Oak Trust was M&T Bank … appears to be similarly calculated to mislead. M&T Bank is not the insurance trustee…."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS

including in the underlying case (Appendix-236-243, hereinafter "A" (finding that Mr. Carpenter failed to comply with discovery obligations and imposing sanctions)), Universitas has been unable to even locate a substantial amount of the Spencer Proceeds, and its recovery of them has been limited to an amount far less than the legal fees expended attempting to collect those assets. Universitas became indebted to its prior counsel for millions in legal fees, beginning with those fees incurred in the arbitration, and was subjected to further litigation as a result.[7] (A-72.)

Carpenter's frivolous motions practice is so extensive that the District Court for the Southern District of New York likened his motions to a "protracted and uncompensable war of attrition."[8] This extensive frivolous motions practice has led to numerous sanctions, including sanctions in the Southern District of New York, in the underlying proceeding for Mr. Carpenter's failure to comply with discovery obligations, and appellate sanctions before this Court and the Court of the Appeals

_____

37988, at *14 (S.D.N.Y. Mar. 23, 2016) ("After Judge Swain's November 2013 finding that Carpenter had fabricated testimony regarding the location of the insurance proceeds, Carpenter testified again on these issues and Judge Swain again found that his testimony was not credible."); *Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) (finding Carpenter in contempt of court for refusal to produce court ordered discovery).

[7] All the while, Mr. Carpenter and his associates had no fewer than six law firms representing them in the underlying proceeding, which he claims are funded by his wife, a former defendant in the case. (A-258.)

[8] *Universitas Educ.*, 2014 U.S. Dist. LEXIS 143667, at *6.

for the Tenth Circuit.[9] In addition to the bad-faith litigation tactics that have stifled Appellant's ability to recover, the entities against which Universitas actually acquired judgments appear to have long been stripped of any assets, and all claim to be insolvent, despite the fact that those entities continue litigating in various fora around the county.

Thus, Universitas initiated the underlying proceeding in the United States District Court for the District of Connecticut (the "District Court") in an effort to consolidate the outstanding litigation and recover from Carpenter-controlled entities that appeared to maintain sufficient assets to satisfy the judgments against Mr. Carpenter and his other shell companies. Universitas sought to recover from numerous Carpenter affiliated entities, collectively referred to as "Benistar," as well as certain individuals complicit in Mr. Carpenter's theft of the insurance proceeds, including his wife, Molly Carpenter, and his long-time business partner, Donald Trudeau, who were unindicted co-conspirators of Mr. Carpenter.

---

[9] *Universitas Educ., LLC v. Grist Mill Capital, LLC et al.*, Nos. 21-2690(L), 21-2691, 2023 U.S. App. LEXIS 4257 (2d Cir. Feb. 23, 2023) (finding that Mr. Carpenter's and Grist Mill Capital, LLC's challenges to the second turnover motion were largely baseless or frivolous and imposing sanctions); (A-283); *Universitas Educ., LLC v. Avon Capital, LLC*, No. 22-6038, 2022 U.S. App. LEXIS 35300, at *7-*8 (10th Cir. Dec. 21, 2022) (finding that counsel for a Carpenter-controlled entity did not have authority to file motions); (A-284-85.)

Universitas sought to impose alter ego liability on these entities and individuals, as well as to acquire constructive trusts against certain assets in the possession of those entities and individuals. (A-30-35.) Specifically, Universitas sought judgments against Ms. Carpenter; Mr. Trudeau; Benistar Administrative Services, Inc. ("BASI"), which is the administrative center for the Carpenter enterprise; TPG Group, Inc. ("TPG"), which is a repository for insurance commissions; Grist Mill Partners, LLC ("GMP"), which owns property for the beneficial interest of Mr. Carpenter; Moonstone Partners, Inc. ("Moonstone"), which was the end recipient of Spencer Proceeds, which it used to purchase an extravagant beach home for Mr. Carpenter's and his family's benefit; and various charitable trusts, which similarly appear to be end recipients of Spencer Proceeds. The Arbitrator recognized the importance of allowing Universitas to have its day in court against BASI and the other central Carpenter-controlled entities.

Judge Meyer, however, ignored the aforementioned circumstances at a time when he was, unbeknownst to Universitas, conflicted as a result of a relationship shared by Mr. Carpenter's daughter, who was a defendant in the case, and Judge Meyer's spouse. This relationship included Judge Meyer's spouse aiding Mr. Carpenter's daughter in drafting letters to the court in Mr. Carpenter's sentencing proceeding. Universitas only became aware of this patent conflict when it was revealed by counsel for Mr. Carpenter's daughter, Caroline Meckel, at a hearing on

6

February 1, 2023, over eight months after the claims against Ms. Meckel were brought. (A-151:9-19.)

The Hon. Judge Meyer dismissed the constructive trust causes of action in March of 2021, stating that constructive trust was only a remedy and not an independent cause of action. *Universitas Educ., LLC v. Benistar et al.*, 2021 U.S. Dist. LEXIS 47804, at *16-*17 (D. Conn. Mar. 15, 2021); (Special Appendix-13, hereinafter "SPA"). Judge Meyer further dismissed the claims against Ms. Carpenter, Mr. Trudeau, Moonstone, TPG, and BASI, finding that those claims were all barred by *res judicata*, and should have been brought in the Southern District of New York Proceeding at the time that Universitas brought its turnover motions. (SPA-30-32.) Judge Meyer's decision became the law of the case.

After the District Court denied Universitas's Motion for Partial Reconsideration and permitted Universitas to amend its Complaint, (SPA-48), Universitas filed an Amended Complaint. (A-37-91.) Universitas once again brought claims against GMP and the Charitable Trusts for alter ego liability. Universitas also brought claims for unjust enrichment against these entities. Universitas also sought to impose alter ego liability on 1& 3 Mill Pond Partners, LLC, another Carpenter-controlled entity that owned property for Mr. Carpenter's and his family's beneficial interest. Universitas further brought unjust enrichment claims against Seir Hill Partners, LLC ("Seir Hill"); Birch Hill Partners, LLC ("Birch Hill"); and Greyhound

Partners, LLC ("Greyhound"). (A-73-89.)[10] Following the law of the case set by Judge Meyer, the Hon. Judge Dooley[11] dismissed all these claims on *res judicata*, finding that they should have been brought before judgment was entered on the second turnover motion in the Southern District of New York on August 12, 2014.

The District Court's dismissal was erroneous. First, the District Court erroneously found that Universitas could not bring constructive trust claims. Connecticut law clearly permits constructive trust claims to be brought as independent causes of action, and not merely as a remedy. Second, the District Court erroneously dismissed all of the Appellees on *res judicata* grounds. The District Court's application of *res judicata* was overly rigid, in contravention of New York law and precedent. The District Court erroneously held that no equitable considerations were relevant in determining whether *res judicata* should be applied in this case. The District Court further erroneously held that the Southern District of New York would have been a proper forum for the claims against all the Appellees with respect to subject matter jurisdiction, despite the fact that the Southern District of New York had previously found that it lacked ancillary jurisdiction to consider a

---

[10] Universitas also brought unjust enrichment claims against Steven and Caroline Meckel, who are Mr. Carpenter's son-in-law and daughter, respectively. These claims were dismissed, but Universitas is not seeking to appeal the dismissal of these claims. (SPA-63-65.)

[11] Judge Dooley replaced Judge Meyer in the underlying proceeding after Judge Meyer's recused himself after the conflict with Ms. Meckel came to light.

turnover motion for assets held by third parties that were not directly linked to the Universitas proceeds.[12] Finally, the District Court erroneously held that bringing alter ego and other claims against all of the Appellees at the time of the original turnover proceedings would have been consistent with the requirements of New York *res judicata* law that the claims "formed a convenient trial unit[], and [that] their treatment as a unit conforms to the parties' expectations." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). The District Court's decisions place an insurmountable burden upon Universitas—because Universitas was aware of the existence of hundreds of shell companies controlled by Mr. Carpenter, Universitas was obligated to bring an action against all of those entities at the time it brought its turnover motions, no matter how attenuated those companies were from the transfer of the stolen funds, or else be at the mercy of Mr. Carpenter's and his shell entities open contempt for the judiciary and refusal to satisfy judgments. This reading of New York's *res judicata* precedent cannot be correct and is inconsistent with public policy. The District Court judgment must be reversed.

---

[12] *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2015 U.S. Dist. LEXIS 435, at *11 (S.D.N.Y. Jan. 5, 2015).

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction was based on 28 U.S.C. §§ 1332 (2018) as complete diversity existed between the parties. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 (2018) as the District Court entered a final judgment on August 8, 2023, which was appealed on August 28, 2023. (SPA-1-2.)

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred by finding that all of the claims against the Appellees were properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because they were barred by *res judicata*. The standard of review is *de novo*.

2.     Whether the District Court erred in finding that Universitas could not bring a claim for constructive trust pursuant to Connecticut law and dismissing such claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The standard of review is *de novo.*

## STATEMENT OF THE CASE

Appellees are network of companies controlled by Daniel Carpenter and used to hide assets from Universitas and other creditors, as well as individuals who are associates of Mr. Carpenter and have been involved in Mr. Carpenter's fraudulent schemes. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *7 (S.D.N.Y. Aug. 7, 2014). Carpenter controls *hundreds* of entities, many of which are nothing more than shell companies. *Id*. These entities are highly-interconnected and are often used interchangeably to hide Carpenter's personal assets from his creditors. *Universitas Educ., LLC v. Nova Grp, Inc.*, 2014 U.S. Dist. LEXIS 3983, at *13 (S.D.N.Y. Jan. 13, 2014). ("The evidence received . . . concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect for distinctions among his business entities . . . ."); *see also Carpenter*, 190 F. Supp. 3d at 273 ("[T]he evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved."). At the heart of Mr. Carpenter's enterprise is BASI, which is a repository for all employees and documents concerning all of the shell companies.

## I.     The Underlying Arbitration Award and Confirmation.

Carpenter operated many of these shell companies as part of a criminal conspiracy to, *inter alia*, steal and launder $30 million that rightfully belonged to Universitas. This conspiracy involved the Charter Oak Trust Welfare Benefit Plan

("COT"), a corrupted welfare benefit plan that Carpenter used to induce stranger-oriented life insurance ("STOLI") fraud,[13] and Nova Group, Inc. ("Nova"), the corporate trustee of COT. Carpenter controlled both Nova and COT.

Universitas Education, LLC "(Universitas") was the sole and irrevocable beneficiary of two life-insurance policies taken out on the life of Sash Spencer and placed in the COT. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *6; (A-40, ¶¶ 27-28.) The face value of these policies totaled $30 million. When Mr. Spencer died, Nova, at Carpenter's direction, wrongfully denied Universitas' claim to the insurance proceeds and directed that the insurance proceeds for which Universitas was the beneficiary (the "Spencer Proceeds") be fraudulently conveyed through shell entities under his control. Universitas demanded arbitration against Nova following the wrongful denial of its claim to the Spencer Proceeds, which was required take place in New York. Post-judgment discovery later revealed that Daniel Carpenter was the architect and financier of Nova's claims and defenses throughout the arbitration. *Universitas Educ., LLC*, 2014 U.S. Dist. LEXIS 3983, at *21 ("Mr. Carpenter was actively involved in, and controlled, Nova's litigation efforts in the Arbitration.") (A-42, ¶ 31.) A binding arbitration award was entered against Nova and in favor of Universitas in January of 2011. (A-44, ¶ 44.)

---

[13] *See Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016).

Nova refused to pay the arbitration award although it had submitted sworn affidavits that it possessed the assets to satisfy the award, (A-340, ¶ 4), and thus Universitas filed an action seeking to enforce the award in the United States District Court for the Southern District of New York (the "Southern District Proceeding") The Southern District of New York confirmed the arbitration award and entered judgment against Nova in the amount of $30,181,880.30. (A-44, ¶ 47.)

## II.    <u>Post-Judgment Discovery</u>

After Nova refused to pay the arbitration award, Universitas engaged in substantial post-judgment discovery efforts. Universitas sought documents and testimony from Daniel Carpenter, Molly Carpenter, Donald Trudeau, and various entities under Daniel Carpenter's control. Mr. Carpenter and these affiliated individuals vigorously opposed any form of post-judgment discovery. Numerous motions to quash and to prevent discovery filed by Carpenter-affiliated entities were found to be sanctionable. Even after the testimony of various individuals and document production was compelled, much of the stolen Spencer Proceeds remained hidden. Furthermore, the testimony and documents produced were replete with falsehoods that Universitas later discovered after reviewing documents that were made public after Mr. Carpenter's criminal conviction before the District Court. For instance, Mr. Trudeau falsely testified that he was unaware that the Charter Oak Trust Document was fraudulently altered after the death of Sash Spencer, despite the

fact that documentary evidence revealed that Mr. Trudeau was in fact aware of such alterations at the time that they were made. (A-5, ¶ 31.)

### III.   <u>The Turnover Proceedings</u>

Post-judgment discovery then revealed that Carpenter stole the insurance proceeds, laundered them through shell companies, and used the Spencer Proceeds, *inter alia*, to purchase an extravagant beachfront vacation property and a life insurance portfolio with a face value of approximately $30 million. (A-40, ¶ 20.) Universitas filed three turnover motions in an attempt to recover assets sufficient to satisfy its judgment against Nova.

The first turnover motion sought to recover the proceeds of an insurance policy on a property owned by Moonstone. Daniel Carpenter, Molly Carpenter, and Moonstone all appeared in this proceeding. *Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803. After a bench trial in May of 2013, the Southern District issued an opinion concluding, *inter alia*, that Mr. Carpenter caused the transfer of insurance policies through his shell companies, of which there were hundreds, including Moonstone, for the benefit of Mr. Carpenter and his family. *Id.* at *30. The Southern District of New York then found that Universitas possessed a superior property interest in the property owned by Moonstone. *Id.* at *40.

Universitas filed the second turnover motion in October of 2013. This turnover motion sought the turnover of assets from Mr. Carpenter personally, as well

as several entities under his control. *Universitas Educ*, 2014 U.S. Dist. LEXIS 109077. All the entities named in the second turnover motion were direct recipients of the insurance proceeds stolen from Universitas, which each of those entities then transferred to other, Carpenter-controlled shell companies. *Id.* at *30-*34. The District Court subsequently held an evidentiary hearing on November 22, 2013. The District Court then entered judgment on the second turnover motion on August 7, 2014. Notably, the Court entered judgment against Mr. Carpenter in his personal capacity for $30.6 million and against Carpenter Financial Group, which is a member of Appellee Grist Mill Partners, for $11.14 million. *Id.* at *38-*39.

Universitas then filed a third turnover motion in the Southern District of New York seeking a turnover of an insurance policy held by one of the judgment debtors from the second turnover proceeding. *Universitas Educ*, 2015 U.S. Dist. LEXIS 435. The Southern District of New York held that this turnover motion, as well as other proceedings related to insurance policies held by this judgment debtor were beyond the scope of the Southern District of New York's ancillary jurisdiction, as they were premised on "trust agreements . . . and other contracts that were not involved in the underlying arbitration and original judgment enforcement proceedings, nor implicated in the subsequent fraudulence conveyance proceedings" and further implicated third-party rights. *Id.* at *10-*11. The Southern District of New York

found that such proceedings were too "attenuated" from the original enforcement proceedings before the Court. *Id.* at \*11.

## IV.   **The Entities at Issue**

As explained, *supra*, post-judgment discovery revealed hundreds of entities under Mr. Carpenter's direct or indirect control. Each of the Appellees are either one of these entities or one of Mr. Carpenter's close associates, who help him in running these entities. Collectively, Universitas refers to these entities as Benistar, since the predominant business entity at the center of Mr. Carpenter's enterprise is Benistar Administrative Services, Inc. ("BASI").

### a.   BASI

As Universitas alleges in its Complaint, BASI is the central hub of Mr. Carpenter's shell company enterprise. (A-18-19, ¶¶ 90-98.) The other shell entities, including the other named Appellees, generally lack any real employees and only possess nominal officers. As the District Court found in Mr. Carpenter's criminal proceeding, "the evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved" and that "corporate entities were created and discarded at Mr. Carpenter's direction . . . ." *Carpenter*, 190 F. Supp. 3d at 274. BASI has previously been adjudicated to be an alter ego of Mr. Carpenters. (A-18, ¶ 93.)

All administrative tasks for Mr. Carpenter's various shell companies are handled by BASI personnel, and despite Mr. Carpenter's claims that he no longer has any relationship with BASI, Mr. Carpenter still utilizes BASI resources and issues instructions to BASI personnel. (A-327-29, directing BASI employees to complete documents for an entity under Mr. Carpenter's control). The other shell entities have also historically operated out of the same address as BASI.

    b.  <u>TPG Group, Inc.</u>

As alleged in Universitas's Complaint, Appellee TPG is a Delaware corporation owned by BASI, Mr. Trudeau, and Ms. Carpenter, but ultimately controlled by Mr. Carpenter. (A-19-20.) TPG largely operates as a repository and pooling mechanism for commissions on the sale of insurance proceeds. (A-19, ¶ 101); *Carpenter*, 190 F. Supp. 3d at 273. As alleged in Universitas's Complaint, TPG has transferred over $1 million of its own assets to a judgment debtor in an effort to permit Mr. Carpenter to profit from TPG's business without maintaining an official presence on its financial records and corporate documents. (A-19, ¶ 103). Mr. Carpenter exercises control over TPG, despite his perjurious testimony that his wife and Mr. Trudeau controlled it. (A-104, ¶ 104); *Carpenter*, 190 F. Supp. 3d at 273.

   c.  Grist Mill Partners

Appellee GMP is a Delaware limited liability company was the nominal owner of property located at 100 Grist Mill Road in Simsbury, Connecticut, which served as the office for Carpenter-controlled entities through 2014. (A-20, ¶ 107). Universitas pled that GMP is owned by two entities—Carpenter Financial Group ("CFG"), a turnover judgment debtor, and Caroline Financial Group. After acquiring a judgment against CFG, Universitas moved for a charging order against CFG's interest in GMP. (A-290-291.) GMP was tangentially involved in the Southern District of New York proceeding with respect to an effort to enter into a lease and to permit GMP to continue to collect rents from a tenant of the property, Curaleaf. (A-286-289.) GMP has since sold the property at 100 Grist Mill Road with court supervision as a result of a foreclosure action against the property. The proceeds of the sale were deposited in the District Court, but have since been released to GMP. (A-282.)

   d.  The Charitable Trusts

Appellees Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trust (collectively the "Charitable Trusts") are trusts organized under Delaware law. Mr. Carpenter is the sole grantor and trustee of the Charitable Trusts and exercises complete control over the Charitable Trusts and their assets. (A-61, ¶ 135.) In

November of 2009, Mr. Carpenter caused Grist Mill Holdings, another turnover judgment debtor, to transfer $1.76 million of the insurance proceeds stolen from Universitas to the various trusts. Universitas learned about these transfers during post-judgment discovery in the Southern District of New York proceedings through records produced by third-party J.P. Morgan Chase Bank. (A-316-21.) By the time Universitas acquired this information in April of 2013, it appeared as though the Charitable Trusts had largely been stripped of their assets and held less than $10,000 in balances in Chase Bank accounts. (A-320-21.) In March of 2013, Mr. Carpenter had represented that the Charitable Trusts may have held assets worth tens of millions of dollars. (A-61, ¶ 137.)

e.  The Limited Liability Company Appellees

Seir Hill Partners, LLC ("Seir Hill") is a Connecticut limited liability company that owns a property located at 25 Seir Hill Road in Norwalk, Connecticut. Seir Hill is nominally owned and controlled by Molly Carpenter and Caroline Financial Group, Inc. (A-62.) Seir Hill received $150,000 from CFG on or about December 19, 2012. As pleaded in the Amended Complaint, Seir Hill then purchased a property located at 25 Seir Hill Road in Norwalk, Connecticut on January 2, 2013. (A-63, ¶ 152.)

Birch Hill Partners, LLC ("Birch Hill") is a Connecticut limited liability company that owns a property located at 68 Phoenix Street in Vernon, Connecticut.

Birch Hill was capitalized with $200,000 from an entity controlled by Mr. Carpenter. (A-64, ¶ 165.) Birch Hill received $200,000 from that entity on or about June 18, 2010. As pleaded in the Amended Complaint, Birch Hill then purchased a property located at in Vernon, Connecticut on June 22, 2010.

1 & 3 Mill Pond Partners, LLC is a Delaware limited liability company that owns the property located at 1 & 3 Mill Pond Lane in Simsbury, Connecticut. While Mill Pond purchased the property at 1& 3 Mill Pond Lane before the defalcation of the Universitas insurance proceeds, Mill Pond itself is primarily owned by CFG. (A-64, ¶ 164.)Mr. Carpenter has derived a significant benefit at the expense of Universitas from the nominal ownership of the 1 & 3 Mill Pond Lane property during the time that a judgment was outstanding against Mr. Carpenter and CFG. Molly Carpenter and Daniel Carpenter caused the property owned by Mill Pond to be sold in March of 2022, while Universitas's motion to amend its complaint to include Mill Pond was pending. (A-297-99.)

Greyhound Partners, LLC ("Greyhound") is a Connecticut limited liability company that owns a property located at 84 Lawton Road in Canton, Connecticut. This property was purchased in February of 2011 from the Carpenter Family Trust. Greyhound's sole member at the time the Amended Complaint was filed was Greyhound Management, Inc., a Connecticut corporation, but Mr. Carpenter attempted to alter the ownership to include his sister, a New York resident, in order

to divest the Court of subject matter jurisdiction in August of 2022. (A-300-04 (attempting to change address to New York and include Constance Carpenter, a New York resident, on annual reports after the filing of the Amended Complaint).) The purchase of the property at 84 Lawton Road occurred approximately one month after the arbitration award was entered on January 2, 2011.

Restraining notices were served against these entities following entry of the second turnover judgment. *Universitas Educ., LLC v. Benistar et al.*, 2023 U.S. Dist. LEXIS 133837, at *19-*20 (D. Conn. Aug. 2, 2023); (SPA-61).

### f. The Individual Appellees

Appellee Molly Carpenter is Daniel Carpenter's wife and holds executive positions and/or ownership interests in numerous Benistar entities, including BASI, TPG, and Moonstone. As pleaded in the Complaint, Molly Carpenter holds Daniel Carpenter's primary power of attorney while he is incarcerated, but defers the executive decisions made with respect to the Benistar entities to Daniel Carpenter, thereby providing Mr. Carpenter with effective control over the Benistar enterprise. Molly Carpenter is a signatory on dozens of bank accounts for Carpenter-controlled entities; personally owns 99% of Moonstone, which was the end recipient of insurance proceeds stolen from Universitas; and has personally received transfers of funds and/or other assets connected to the insurance proceeds stolen from

Universitas. Molly Carpenter was involved in post-judgment discovery proceedings in the Southern District of New York Proceeding. (A-26-27.)

Donald Trudeau is the nominal President of BASI and TPG, although it appears as though he too defers to Mr. Carpenter with respect to executive decisions made on behalf of these entities. Mr. Trudeau was an unindicted co-conspirator on the fraudulent transfer scheme for which Mr. Carpenter was sentenced to prison. *Carpenter*, 190 F. Supp. 3d at 300 n. 62 ("Don Trudeau, another co-conspirator, is listed as one of the agents entitled to a commission on the first [Universitas] policy."). Mr. Trudeau further directed the fraudulent transfer of millions of dollars of the life insurance proceeds rightfully belonging to Universitas to Avon Capital, LLC, which was a turnover judgment debtor. Mr. Trudeau was involved in the original arbitration, but no judgment was entered against him. (A-23-25.)

## V.    Criminal Prosecution Concerning the Stolen Insurance Proceeds.

The United States District Court for the District of Connecticut later convicted Mr. Carpenter on fifty-seven (57) felony counts, including ten counts of money laundering, thirteen counts of illegal monetary transactions, and conspiracy to commit money laundering directly related to the defalcation of insurance proceeds underlying Universitas' judgment. *See Carpenter*, 190 F. Supp. 3d 260. The Connecticut court explained that Mr. Carpenter engaged in criminal activity through

his shell companies and found BASI and TPG to be among the "most significant" entities within the money laundering conspiracy." See *id.* at 273.

## VI. **The District Court Proceedings.**

Universitas filed its Complaint in the District Court in May of 2020, alleging six counts against Appellees BASI, TPG, the Charitable Trusts, GMP, Mr. Trudeau, and Ms. Carpenter. The Complaint sought to impose alter ego liability against all of these Appellees and sought to impose constructive trusts on certain assets controlled by the aforementioned Appellees, except for Mr. Trudeau. The Complaint also sought all attorneys' fees and costs incurred in the arbitration and post-judgment enforcement proceedings. The Appellees moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court dismissed the claims for attorneys' fees and costs and that parties had not signed the Charter Oak Trust Document. (SPA-12.) The District Court then dismissed the claims of constructive trust, finding that under Connecticut law, a constructive trust is a remedy, not an independent cause of action. (SPA-14.) Notably, the District Court conceded that there exists "no clear appellate decision whether a constructive trust can be an independent cause of action, and there is a split among the decisions of the Superior Court." (SPA-13 (*citing Reed v. McCready*, 2014 Conn. Super. LEXIS 1230, at *16-*20 (Conn. Super. Ct. 2014).) The District Court determined that it could entertain a claim against GMP for alter ego liability based on Delaware law. (SPA-22.) Finally, the

District Court held that the claims against BASI, TPG, Ms. Carpenter, and Mr. Trudeau were barred by *res judicata* because: (1) a final decision was reached on the merits in the Southern District of New York Proceeding in the second turnover motion; (2) if the Appellees are alter egos of the entities in the second turnover proceeding, then they are necessarily in privity and treated as a single entity for personal jurisdiction purposes; and (3) Universitas had sufficient knowledge regarding all of the Appellees to bring alter ego claims against them and that all of the claims were based on the theft of the Spencer proceeds. (SPA-32.)

Universitas moved for reconsideration and to amend its Complaint. The District Court rejected arguments made by Universitas that it lacked sufficient knowledge to bring claims against the Appellees until after the turnover proceedings and that New York law permits alter ego claims against parties that were not defendants in a prior action. The Court rejected both these arguments both on the merits and for failing to make the arguments in its initial briefing. (SPA-4-6.) The District Court did, however, permit Universitas to amend its complaint to bring unjust enrichment claims against GMP, the Charitable Trusts, and several new defendants, including Birch Hill, Seir Hill, 1 & 3 Mill Pond and Greyhound.[14] The District Court then denied Universitas' motion to add alter ego claims against Seir

---

[14] The Court also permitted Universitas to bring unjust enrichment claims against Caroline and Steven Meckel, but those have been dismissed and Universitas does not seek to appeal the dismissal of those claims.

Hill, Birch Hill, and Greyhound as they these claims would be reverse veil piercing claims that are barred by Connecticut law. (SPA-47-48 (*citing* Conn. Gen. Stat. § 33-673c (2019).) The District Court further found that Universitas' characterization of its veil piercing claims as "horizontal" was irrelevant, as it still sought to impose liability on corporate entities for judgments against those entities common owners. (SPA-48.)

After considering Rule 12(b)(6) Motions to Dismiss from the Appellees remaining in the case, and after oral arguments, the District Court dismissed the remainder of the claims against the Appellees in its Memorandum of Decision dated August 2, 2023. It dismissed the claims against GMP and the Charitable Trusts based on *res judicata* applying the same analysis as the District Court had applied in its March 15, 2021 Order. It then dismissed claims against Mill Pond noting that "Universitas offers no rebuttal to the argument that it knew of Mill Pond at the time of the turnover proceedings." (SPA-60.) Finally, the District Court noted that while dismissal based on *res judicata* was "less clear" to Seir Hill, Birch Hill, and Greyhound, the District Court found that Universitas could have brought claims against those entities in the turnover proceedings had it exercised proper due diligence to discover information regarding those entities. (SPA-60.) Final judgment was entered in favor of all the Appellees on August 8, 2023, and Universitas appealed therefrom. (SPA-1-2.)

## SUMMARY OF ARGUMENT

The District Court erred in granting the Appellees' motions to dismiss based on *res judicata*. Under the doctrine of *res judicata*, otherwise known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised" in a prior action. *Simmons v. Trans Express, Inc.*, 16 F.4th 357, 360 (2d Cir. 2021). New York employs a broad, transactional approach to *res judicata*, and extends *res judicata's* preclusive effects "beyond attempts to relitigate identical claims . . . to all other claims arising out of the same transactions or series of transactions." *Id.* (internal citations omitted) (emphasis omitted). In determining whether two actions arise out of the same transaction or series of transactions, New York courts analyze "analyze whether the claims turn on facts that 'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723 (N.Y. 2005)). While the District Court properly found that a final judgment was entered in the second turnover proceeding before the Southern District of New York; that the Appellees were in privity with the respondents in the turnover action; and that the Southern District of New York would have been able to exercise personal jurisdiction over the Appellees if they had been named as respondents in the turnover proceeding,

Universitas respectfully argues that the District Court erred in its application of *res judicata* to the Appellees. The District Court made three separate errors in its application of *res judicata* to the Appellees in this case. First, while the District Court considered whether the claims against the Appellees would have formed a "convenient trial unit" with those alleged in the turnover proceedings, the District Court erroneously failed to consider whether the treatment of the claims asserted against the Appellees would have "conform[ed] to the parties' expectations." *E.g. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). This is an integral part of the analysis as elucidated in this Court's decisions in *Waldman* and its progeny.

Second, the District Court erroneously failed to consider that under New York law, courts must not apply *res judicata* "too rigidly," *Reilly v. Reed*, 379 N.E. 2d 172, 175 (N.Y. 1978), and that *res judicata* need not be inflexibly applied by a court, "even if the technical requirements of the doctrine have been met," *United States v. Town of Bolton Landing*, 946 F. Supp. 162, 169 (N.D.N.Y. 1996). The District Court's Order dismissed the claims against BASI, TPG, Mr. Trudeau, and Ms. Carpenter summarily stated that equitable principles do not "sanction[] the rejection by a federal court of the salutary principle of res judicata." (SPA-32, (*citing Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401 (1981), *abrogated on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998).) However, the District

Court erroneously failed to consider the well-established precedent that *res judicata* could be applied flexibly in the interest of justice. Thus, the overly rigid application by the District Court in its first decision dismissing certain claims was erroneous. The District Court's second decision similarly failed to address the equitable considerations underlying the application of *res judicata* under New York law, only mentioning in a footnote that the Charitable Trusts had advanced inconsistent positions with respect to jurisdiction when arguing in favor or *res judicata* preclusion.

Third, the District Court erred by holding that the Southern District of New York's decision on the third turnover motion did not persuasively indicate that the Southern District of New York likely would have declined to exercise its ancillary jurisdiction over more attenuated alter ego claims that were not related to entities that received the stolen insurance proceeds.

The District Court also erred in dismissing Appellant's constructive trust claims. While the Connecticut Supreme Court has not conclusively decided that a constructive trust is a cause of action, Connecticut courts routinely recognize actions for constructive trust. Certain appellate decisions have also considered the "elements" of a constructive trust claim, thereby suggesting recognition as a cause of action. *Gulack v. Gulack*, 620 A.2d 181 (1993). Another Connecticut appellate decision, when determining whether a claim for constructive trust should be barred

29

by *res judicata*, upheld the trial court's decision to find that the constructive trust claim could proceed and was not procedurally barred. *Cadle Co. v. Gabel*, 7944 A.2d 1029, 1035 n.9 (Conn. App. 2002). Taken together, these decisions and more recent recognition of constructive trust claims in Connecticut make clear that the District Court erred in dismissing the Appellant's constructive trust claims.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, the Court should grant the motion only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *E.g. Skinner v. Chapman*, 489 F. Supp. 2d 298 (W.D.N.Y. 2007) (quoting *Hishon v. King and Spalding*, 467 U.S. 69, 73 (1984)). The Complaint must contain "sufficient factual matter, accepted as true" to state a "plausible claim [on] its face." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Ditech Holding Corp.*, No. 19-01137 (JLG), 2021 Bankr. LEXIS 2998, at *16-*17 (Bankr. S.D.N.Y. Oct. 28, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a Rule 12(b)(6) motion, a Court must accept as true factual allegations, even if those allegations may not be factually correct. *E.g. Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007); *Walker v. Fitzpatrick*, 814 F. App'x 620, 623 (2d Cir. 2020).

Courts may also consider any documents attached as exhibits to, incorporated by reference in, or that are otherwise integral to the complaint in deciding a motion to dismiss. *See, e.g., Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). A court may also take judicial notice of and consider public documents, including court filings and decision, in determining whether a complaint should be dismissed for failure to state a claim. *See, e.g., Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). A court may determine whether a complaint is barred by res judicata on a Motion to Dismiss pursuant to FRCP 12(b). *E.g. Simmons v. Trans Express, Inc.*, 16 F.4th 357, 359 (2d Cir. 2021); *Chapman*, 489 F. Supp. 2d at 302 (internal citations omitted).

An appellate court reviews a grant of a motion to dismiss *de novo*. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 102 (2d Cir. 2022). An appellate court also reviews a district court's application of *res judicata de novo. Amid v. Chase*, 720 F. App'x 6, 8 (2d Cir. 2017) (citing *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017)). When reviewing a district court's factual findings on a motion to dismiss, an appellate court reviews those findings for clear error. *Sheldon v. Khanal*, 96 F. App'x 737, 738 (2d Cir. 2010).

## ARGUMENT

The District Court erred in its application of *res judicata* to Universitas's claims against the Appellees. As explained, *supra*, the District Court's application of *res judicata* failed to consider whether bringing the current claims would have been consistent with party expectations, was overly-rigid in contravention of New York law, and improperly rejected arguments that the Southern District of New York would not have exercised jurisdiction over attenuated proceedings. Moreover, the District Court consistently conflated mere knowledge of the existence of certain Appellees, or knowledge of certain assets, with sufficient knowledge to bring good faith claims against those Appellees in the turnover proceedings in the Southern District of New York.

Mr. Carpenter and his affiliates and affiliated entities have a protracted history in this litigation of dilatory and bad faith tactics, discovery abuse, and concealing assets. Universitas sought to engage in good faith post-judgment discovery to make claims targeted at the entities most responsible for the theft and fraudulent conveyances of the insurance proceeds that Mr. Carpenter stole from Universitas. It acquired judgments, which it has largely been unable to collect directly as a result of Mr. Carpenter's and the Appellees' malfeasance and continued concealment of assets. In post-judgment discovery, Universitas also became aware of hundreds of other entities under Mr. Carpenter's control, many of which, to Universitas's

knowledge, had never been recipients of or transferred the stolen funds, and which were completely attenuated from the factual nexus of the turnover proceedings. The District Court's decision stands for the proposition that Universitas was obligated to bring a turnover and alter ego proceeding against hundreds of companies, no matter how attenuated those entities were from the transfer of the stolen insurance policy proceeds, or else be barred from bringing any further claims against Mr. Carpenter's criminal enterprise. This interpretation is inconsistent with *res judicata* law in New York, and sets a concerning precedent for its application, particularly in post-judgment proceedings, that is inconsistent with the public policy goals of expeditious litigation and permitting judgment creditors to collect on their judgments. Thus, Universitas respectfully requests that this Court overturn the District Court's decisions.

**I.**     **The District Court Erred in Dismissing the Complaint and Amended Complaint because the District Court Improperly Found that Res Judicata Barred all the Claims Against the Appellees.**

      a.  <u>Legal Standard for Res Judicata Claims Under New York Law</u>

Pursuant to New York law, which the District Court found was applicable to the underlying proceeding, "*[r]es judicata* bars future actions between the same parties on the same cause of action where a court entered a valid final judgment." *Jacobson Dev. Grp., LLC v. Grossman*, 198 A.D.3d 956, 959 (N.Y. App. Div. 2021). *Res judicata* also bars "parties or their privies from relitigating issues that were or

could have been raised" in a prior action. *Simmons*, 16 F.4th at 359 (internal citations omitted); *Matter of B.Z. Chiropractic, P.C. v. Allstate Ins. Co.*, 197 A.d.3d 144, 152 (N.Y. App. Div. 2021) ("*res judicata* . . . prevents the parties to an action, and those in privity with them, from subsequently re-litigating any questions that were already decided") (internal citations omitted).

Under New York law, *res judicata* bars successive litigation "based on the same transaction or series of connected transactions if:" (1) there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008); *Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105, at *2 (2d Cir. Nov. 29, 2021).

New York adheres to a "transactional analysis of res judicata," which bars later claims arising out of the same facts and circumstances as an earlier litigated claim, even where a claimant bases new claims on "different legal theories or seeks dissimilar or additional relief." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at *12 (E.D.N.Y. Mar. 31, 2022) (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)). Thus, under New York *res judicata* principles, which are broader than those applied in federal court, claims are barred in subsequent suits if they arise out of the "same

transaction or series of transactions." *Simmons*, 16 F.4th at 359; *Ins. Co. of State of Pennsylvania v. HSBC Bank USA*, 10 N.Y. 3d 32, 38 n.3, 852 N.Y.S. 2d 812, 882 N.E. 2d 381 (2008). In assessing whether claims arise out of the same transaction or series of transactions, New York courts analyze whether the claims "turn on facts that are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Simmons*, 16 F.4th at 359 (quoting *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100-01, 843 N.E.2d 723, 810 N.Y.S.2d 96 (2005)); *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). Thus, *res judicata* applies if the prior action was "grounded on the same gravamen of the wrong upon which the action is brought." *Smith v. Russell Sage Coll.*, 54 N.Y. 2d 185, 192, 445 N.Y.S. 2d 68, 429 N.E. 2d 746 (1981).

*Res judicata* may also be properly applied if a party discovers information that supports a cause of action with "the reasonable exercise of due diligence[,]" such that they have a "full and fair opportunity to litigate" the theory they advance in a subsequent proceeding. *In re Alfonzo T.*, 79 A.D. 3d 1724, 1725, 914 N.Y.S. 2d 448 (N.Y. App. Div. 2010). Notably, newly discovered evidence does not preclude the application of *res judicata*, unless that evidence was fraudulently concealed or discoverable with due diligence. *Saud v. Bank of New York*, 929 F. 2d 916, 920 (2d Cir. 1991). However, *res judicata* cannot be properly applied if a court in the first

action would have declined to exercise jurisdiction over a case. *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009) ("res judicata . . . does not apply if 'the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion.'") (internal citations omitted).

Notwithstanding its broad approach, New York takes a "pragmatic and flexible attitude toward [*res judicata*], recognizing that the doctrine, if applied too rigidly, could work considerable injustice. *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111, 148 N.Y.S.3d 178, 170 N.E.3d 733 (2021)); *Reilly v. Reed*, 379 N.E. 2d 172, 175 (N.Y. 1978) ("*In properly seeking to deny a litigant two days in court, courts must be careful not to deprive them of one.*") (emphasis added); *see also United States v. Town of Bolton Landing*, 946 F. Supp. 162, 169 (N.D.N.Y. 1996) ("[R]es judicata is not an inflexible doctrine, and need not be applied by the court, even if the technical requirements of the doctrine have been met.") (internal citations omitted).

b. Res Judicata Applicability to New York Turnover and Alter Ego Proceedings.

It is "well-settled" that N.Y. C.P.L.R. § 5225(b)—the procedural mechanism by which Universitas brought its turnover motions in the Southern District of New York—can be used both as "procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," as well as to pierce the corporate veil or assert

alter ego liability. *Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669, at *14 (S.D.N.Y. July 2, 2020). Specifically, C.P.L.R. § 5225(b) permits a party, by special proceeding, to obtain satisfaction of judgments by the judgment creditor:

> against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee.

*See also Theatre Row Phase II Assocs. v. H & I Inc.*, 443 B.R. 592, 596 (S.D.N.Y. 2011). However, if alter ego claims are being pursued in an action pursuant to C.P.L.R. § 5225, "the court may not simply exercise ancillary enforcement jurisdiction … and must make a separate determination of whether it has jurisdiction" over alter ego claims. *First Horizon Bank v. Moriarty-Gentile*, No. 10-CV-00289 (KAM)(RER), 2015 U.S. Dist. LEXIS 165695, at *11 (E.D.N.Y. 2015).

Moreover, if a party is pursuing an alter ego claim, then the prospective alter egos are all treated as a single entity for purposes of *res judicata*, meaning that the privity requirement is automatically met. *E.g. Wm. Passalacqua Builders, Inc. v.*

37

*Resnick Developers., Inc.*, 933 F.2d 131, 142– 43 (2d Cir. 1991). Additionally, prospective alter egos "are treated as one entity for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009).

Multiple courts have entertained alter ego determinations after a finding of fraudulent conveyance, particularly where plaintiffs discovered new information about alter egos in post-judgment discovery. *E.g. Cornwall Mgmt. Ltd v. Kambolin*, 2015 NY Slip Op 30740(U), at *21- *25 (Sup. Ct. N.Y. Cty. Apr. 19, 2015); *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014) (finding that "claims seeking to enforce prior judgments based on contractual liability involved "issues distinct from whether Defendants are liable on a veil-piercing theory"), *but see, Ren-Cris Litho, Inc. v. Vantage Graphics*, No. 96-7802, 1997 U.S App. LEXIS 3333, at *13-*15 (2d Cir. Feb. 24, 1997) (finding that a lack of formal barriers to bringing veil-piercing claims in a prior state turnover proceeding barred future attempts to bring those veil-piercing claims); *Theatre Row*, 443 B.R. 592, 598-601 (finding that veil-piercing claims and other equitable defenses were precluded where they could have been raised in a prior proceeding under C.P.L.R. § 5225(b).

c.  <u>The District Court Erred in Finding that all of Universitas' Claims were Based on the Same Transaction or Series of Transactions and that Its Claims Against the Appellees were Barred.</u>

The District Court erred in its transactional analysis of *res judicata* under New York law. However, the District Court's error was discrete, and Universitas does not suggest that the entirety of the District Court's analysis and legal conclusions were incorrect. At the outset, Universitas concedes that alter ego claims may be brought pursuant to N.Y. C.P.L.R. Í 5225(b), and that no procedural bar existed to bringing those claims in the turnover proceedings before the Southern District of New York. Universitas further concedes that the turnover proceedings in the Southern District of New York constituted a final judgment on the merits. It is that very judgment that Universitas now seeks to enforce. Universitas concedes that the Appellees would necessarily have been in privity with the turnover respondents, as Universitas seeks to impose alter ego liability. Moreover, the Southern District of New York could properly have exercised personal jurisdiction over the Appellees in the turnover proceedings because alter egos are treated as a single entity for the purposes of personal jurisdiction, especially because the Southern District specifically found that it had personal jurisdiction over the turnover respondents in light of the fact that their actions to prevent the satisfaction of a New York judgment availed them of the forum. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 U.S. Dist. LEXIS 109077, at *21-*23 (S.D.N.Y Aug. 7, 2014). Thus, whether *res judicata* is properly

applicable turns on whether Universitas could have and should have brought its alter ego claims in the earlier action.

All of the Appellees contend that Universitas had sufficient knowledge about those Appellees' existence to have brought alter ego claims against them. The District Court agreed. The District Court found that all of the claims arose from the same transaction or series of transactions—namely the theft of the insurance proceeds owed to Universitas and the subsequent fraudulent conveyance and concealment of those proceeds to shell companies controlled, either directly or indirectly, by Daniel Carpenter. *Id.* Thus, the District Court held that all of these claims needed to be brought during the turnover proceedings as no critical information was found after those proceedings and any other information could have been found with the exercise of due diligence.

In order to fully complete the transactional analysis, a court must examine "how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether *their treatment as a unit conforms to the parties' expectations* . . . ." *Simmons*, 16 F.4th at 359 (emphasis added). The Court found that Universitas' claims all stem from the theft of the insurance proceeds; that Universitas discovered all of the Appellees or otherwise were aware of those Appellees during the turnover proceedings; and that the common facts underlying

Mr. Carpenter's control over the Benistar enterprise and the transfer of the funds rendered made any alter ego claims a convenient trial unit with the turnover motion.

Universitas does not contest that the interconnected web of Carpenter's shell companies began to unravel in the turnover proceedings, where the Southern District of New York found that Mr. Carpenter exercised control over hundreds of shell entities. The relevant inquiry, however, is whether those findings are all that inform the same transaction or occurrence. Universitas respectfully contends that the District Court erred in holding that they did. Mr. Carpenter's web of shell companies was established well before he defalcated and concealed the insurance proceeds rightfully belonging to Universitas. Unraveling that organizational structure certainly provided meaningful context in the turnover motions, but it was not the relevant factual nexus. Instead, the relevant factual nexus for purposes of the turnover motion was the actual transfer and concealment of the funds after the funds were stolen.

The District Court's initial reliance on *Ren-Cris* and *Theatre Row* were misplaced. (SPA-26-27.) In *Ren-Cris*, this Court found that veil-piercing claims were barred by *res judicata* in a subsequent proceeding where turnover claims were brought previously. Critically, this Court noted that the second lawsuit "merely asserts a new legal theory . . . to obtain *identical monetary relief against the same defendants*." 1997 U.S. App. LEXIS 3333, at *7. This is inapposite to the

circumstances at bar where Universitas is seeking broader monetary relief against multiple defendants that were not a party to the turnover proceedings that sought to trace and recover the Spencer Proceeds. Similarly, *Theatre Row* involved identical parties and an identical claim for monetary relief, but a party attempted to allege new defenses to the claim. The court found that those defenses were precluded. 443 B.R. 592, 601. Once again, these circumstances are a far cry from those in the present case. Universitas is not merely alleging functionally identical claims with new defenses or legal theories; it is alleging new causes of action against entities uninvolved in the theft of the Spencer Proceeds.

Critically, the District Court's analysis fails for another reason. Until the entry of judgment in the second turnover motion, there existed no judgment against Daniel Carpenter in his individual capacity. *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *38. The alter ego claims brought by Universitas stem from that judgment against Mr. Carpenter, and thus were not ripe prior to the entry of that judgment. *E.g. Katt v. Dykhouse*, 983 F.3d 690, 691-94 (6th Cir. 1992) (finding that *res judicata* does not bar claims that were not ripe during the previous proceeding). Thus, they could not have formed a convenient trial unit. As such, the District Court erred by finding that Universitas had to bring the claims against the Appellees in the prior turnover proceedings and dismissing the claims pursuant to Rule 12(b)(6).

    d. <u>The District Court Erred by Failing to Analyze whether Bringing Claims Against Appellees in the Turnover Proceedings would have Comported with Party Expectations.</u>

Even if it was the relevant factual nexus and comprised a convenient trial unit, respectfully, none of the District Court's decisions made the crucial analysis of whether the inclusion of the alter ego claims would have comported with party expectations, instead stopping at whether the facts formed a convenient trial unit. The failure of the District Court to fully engage in this analysis was error and merits a reversal on *de novo* review. Universitas shall discuss each individual Appellee in turn.

    1. *The Court Erroneously Dismissed BASI based on Res Judicata because it would not have Comported with Party Expectations to Include BASI.*

While the turnover proceedings before the Southern District of New York encompassed a substantial inquiry into the nature of the Benistar enterprise during discovery proceedings, the key focus was always the flow of the stolen insurance proceeds through the specific entities involved in the Benistar enterprise. Of the hundreds of entities controlled by Mr. Carpenter, only about ten of them, to Universitas's knowledge, actually received and transferred stolen insurance proceeds.[15] The District Court, however, found that the "gravamen" of the wrong

---

[15] These entities were the Charter Oak Trust, Gris; Mill Capital, LLC; Grist Mill Holdings, LLC; Carpenter Financial Group, Inc.; Avon Capital, LLC; Phoenix Capital Management, LLC; Grist Mill Trust Welfare Benefit Plan; and Hanover Trust Company.

included Mr. Carpenter's control over alter egos generally. It further found that because BASI was considered as a "related entit[y]" in the underlying arbitration, Universitas should have brought alter egos against it in the turnover proceedings. (SPA-30.)

The District Court's analysis of the gravamen of the wrong is too broad, and encompasses every aspect of Universitas's post-judgment discovery. Notably, Universitas never alleges, and the District Court never found, that BASI ever received or transferred any of the Spencer Proceeds. BASI further is not merely a shell entity, like those used to transfer the funds. It maintains its own business activities separate from those of the entities used to conceal the assets. Thus, it would not have comported with party expectations to include BASI in the proceeding, when it never had any contact with the stolen funds that were the entire basis of the turnover proceedings. As such, the District Court erred when it dismissed BASI.

2. *The Court Erroneously Dismissed TPG based on Res Judicata because it would not have Comported with Party Expectations to Include TPG.*

Similarly to BASI, the District Court erred in dismissing TPG based on *res judicata*. TPG's connection to the turnover proceedings and the facts at issue therein is even more tenuous than that of BASI. Once again, the District Court found that TPG was considered as a party in the underlying arbitration (though it was ultimately not named and no claims were adjudged), and that this constituted sufficient basis to bring an alter ego claim against TPG during the turnover proceedings. As with BASI

44

there exist no allegations, and have been no findings of fact, that TPG ever received a portion of the stolen insurance proceeds. It would not have formed a convenient trial unit or comported with party expectations to bring TPG into a limited turnover proceeding that focused entirely on the flow of stolen insurance proceeds that TPG never received. Thus, the District Court erred when it dismissed TPG.

3. *The Court Erroneously Dismissed 1 & 3 Mill Pond Partners based on Res Judicata because it would not have Comported with Party Expectations to Include 1 & 3 Mill Pond.*

The District Court found that "Universitas's alter ego claims against [the limited liability company Appellees] rely heavily on factual allegations drawn from the turnover proceedings before Judge Swain and from even earlier litigation involving Carpenter and entities he controls." (SPA-42.) The District Court's analysis regarding the dismissal of 1 & 3 Mill Pond Partners based on *res judicata* grounds is that Universitas "offers no rebuttal that it knew of Mill Pond at the time of the turnover proceeding." (SPA-60.) Universitas does not contest that it was aware of Mill Pond's existence during the pendency of the turnover proceedings before the Southern District of New York in 2013 and 2014. However, mere knowledge does not satisfy the requirements of *res judicata*.

Once again, Universitas never alleged that Mill Pond received any portion of the funds stolen from Universitas, and the District Court did not make any findings that it did. In fact, Mill Pond appeared to be a holding company for another property

45

held for Mr. Carpenter's and his family's benefit. (A-64, ¶¶ 160-61.) Mill Pond had nothing to do with the theft of the insurance proceeds rightfully owed to Universitas, and thus any claims against it are not based on the same "transaction or occurrence" as claims for the turnover of assets. It is clear that including Mill Pond would not have comported with the expectations of the parties to the turnover proceedings, even if an alter ego claim would have been predicated on Mr. Carpenter's control over Mill Pond, when those proceedings and the decisions rendered make clear that those proceedings had a limited focus on the stolen funds and their transfer. Thus, the District Court erred in dismissing Mill Pond.

4. *The Court Erroneously Dismissed Grist Mill Partners based on Res Judicata because it would not have Comported with Party Expectations to Include Grist Mill Partners.*

Similarly to Mill Pond, the District Court dismissed the claims against GMP because the information cited by Universitas in support of its alter ego claims was largely available to it at the time of the turnover proceeding. However, similarly, to Mill Pond, GMP never received any part of the insurance proceeds stolen from Universitas. Instead, it functioned largely as a holding company for a property held for Mr. Carpenter's and his family's beneficial interest. Universitas never alleges, and the District Court never found, that GMP received any portion of the stolen funds.

GMP points to involvement in the turnover proceedings before the Southern District of New York. However, GMP's involvement was extremely limited—it sought to ensure that it could enter into a rental agreement and collect rents from a tenant, Curaleaf, during the proceedings. (A-292-96.) Once again, knowledge of GMP's existence and its limited participation does not connect it to the flow of the Spencer Proceeds. Nor would it have comported with party expectations to include GMP in the turnover proceedings, when it had not received Spencer Proceeds and was attempting to use assets under its control, unrelated to the stolen funds, in commercial transactions affecting third parties. Thus, the District Court erred in dismissing GMP.

5. *The Court Erroneously Dismissed the Charitable Trusts based on Res Judicata because it would not have Comported with Party Expectations to Include the Charitable Trusts.*

The District Court dismissed the claims against the Charitable Trusts because the information cited by Universitas in support of its alter ego claims was largely available to it at the time of the turnover proceeding (SPA-59-60.) The Charitable Trusts appear to be end recipients of portions of the Spencer Proceeds totaling approximately $1.76 million, which Universitas became aware of in post-judgment discovery. At the time that Universitas was pursuing its turnover motions, in April of 2013, discovery from J.P. Morgan Chase revealed that each of the Charitable

Trusts appeared to hold less than $10,000 in total cash assets in their accounts. (A-320-21.).[16]

However, merely being end recipients of the proceeds does not necessarily mean that the Charitable Trusts should have been included in alter ego determinations at the time of the turnover proceedings. The Charitable Trusts are intended as judgment-proof repositories of assets for Mr. Carpenter and his family. (A-61, ¶ 135.) These Charitable Trusts were not directly involved in the theft and concealment of the insurance proceeds from Universitas in the same way as the turnover respondents. It certainly would not have complied with party expectations to allege widespread alter ego claims against the Charitable Trusts at the time of the turnover proceedings. Thus, the District Court erred in dismissing the Charitable Trusts.

6. *The Court Erroneously Dismissed Greyhound Partners, Seir Hill Partners, and Birch Hill Partners based on Res Judicata because it would not have Comported with Party Expectations to Include Them.*

Similarly to Mill Pond and GMP, the District Court dismissed the claims against Greyhound, Seir Hill, and Birch Hill because the information cited by Universitas in support of its alter ego claims was largely available to it at the time of

---

[16] The email from Daniel Carpenter representing that the Charitable Trusts held tens of millions in assets in March of 2013 was discovered by Universitas after the turnover proceedings, and Universitas was unaware of the potential extent of the assets that were held or may have been held in the Charitable Trusts at the time.

the turnover proceeding. However, similarly, to Mill Pond, Greyhound never received any part of the Spencer Proceeds, to Universitas's knowledge. Instead, Universitas pleads that it is a company controlled by Mr. Carpenter and his sister to hold title to certain property for the benefit of Mr. Carpenter and his family. (A- 70, ¶ 204.) Universitas never alleges, and the District Court never found, that Greyhound received any portion of the Spencer Proceeds.

Greyhound had nothing to do with the theft of the insurance proceeds rightfully owed to Universitas, and thus any claims against it for unjust enrichment are not based on the same "transaction or occurrence" as claims for the turnover of assets.

Seir Hill appears to have received certain funds from a judgment debtor shortly after the arbitration award was rendered, but this was a limited amount of $200,000, which accounts for only a small portion of the Spencer Proceeds. However, even if the funds Seir Hill received had been comingled with stolen insurance proceeds, this is not sufficient justification to assert claims against it at the time of the turnover proceedings. Seir Hill never made transfers and was only an end recipient of funds from other more culpable entities.

Birch Hill is similarly situated to Seir Hill. Birch Hill was capitalized in 2010 with funds from a Carpenter-controlled entity (although it is not clear which entity), and used those funds to purchase a home, which was eventually sold to the Meckels,

Mr. Carpenter's daughter and son-in-law. While Birch Hill and Seir Hill may have received some Spencer Proceeds, these entities were not as involved in the fraudulent conveyance and concealment as the turnover respondents, which were the focus of the turnover proceedings.

In fact, the claims for unjust enrichment against these entities are predicated on the fact that they possess assets held for the beneficial interest of a judgment debtor and his family, who actually exercise control over that property, to the detriment of the judgment creditor, Universitas. The facts supporting these claims would include information discovered about Mr. Carpenter's control over shell companies during discovery in the Southern District of New York proceeding, but would not have depended on any facts related to the fraudulent conveyance of the Spencer Proceeds. Thus, it would not have comported with the expectations of the parties to the turnover proceedings to include such claims against Greyhound, Seir Hill, and Birch Hill when those proceedings and the decisions rendered make clear that those proceedings had a limited focus on the stolen funds and their transfer. The District Court noted that had Universitas exercised proper due diligence, it could and should have discovered the existence of Greyhound, Seir Hill, and Birch Hill and brought them into the action, and that the restraining notices served on these entities after several weeks after the second turnover decision indicate are proof that Universitas failed to exercise diligence in naming them. (SPA-60 (citing *Saud*, 929

F.2d at 920).) However, this argument misses the point, as mere knowledge of the existence of the entity at the time of the turnover proceedings does not necessarily mean that they would be a proper party to that proceeding. Thus, the District Court erred in dismissing Greyhound, Seir Hill, and Birch Hill.

7. *The Court Erroneously Dismissed Molly Carpenter and Donald Trudeau based on Res Judicata because it would not have Comported with Party Expectations to Include them as Alter Egos.*

The District Court also erroneously found that alter ego claims against Donald Trudeau and Molly Carpenter were barred by *res judicata*. In support of this conclusion of law, the District Court noted that Universitas included Ms. Carpenter and Mr. Trudeau in post-judgment discovery, subpoenaed and heard their testimony prior to the turnover proceeding, and otherwise involved them in the turnover and arbitration proceedings. (SPA-30.)

However, the fact that Mr. Trudeau and Ms. Carpenter were involved and provided testimony or other discovery, which was found on more than one occasion to untrue or otherwise not credible, does not, by itself support full alter ego claims against Ms. Carpenter and Mr. Trudeau. In addition, their involvement was far more limited than Daniel Carpenter's. Molly Carpenter and Donald Trudeau are executives of BASI, which is not a judgment debtor. At most, Mr. Trudeau had some control over Avon Capital (A-25, ¶ 138), which was not determined to be a judgment debtor until the conclusion of the second turnover proceeding. Similarly, Molly

Carpenter possessed an ownership interest in Moonstone, which was never adjudicated to be a judgment debtor. Instead, the Southern District of New York found that Universitas possessed a superior property interest in the property owned by Moonstone because it was purchased with Spencer Proceeds. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *40 (S.D.N.Y. Nov. 20, 2013).

Courts have held that a party may bring alter ego claims after the imposition of primary liability, and that such claims do not necessarily invoke the same factual nexus in the transactional approach to *res judicata. Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 523-24 (S.D.N.Y. 2014). It would have far exceeded the scope of the turnover proceedings to seek alter ego determinations against Mr. Trudeau and Ms. Carpenter, especially at a time in which none of the entities over which they exercise authority or ownership were judgment debtors. It certainly would not have comported with the parties' expectations to initiate broad alter ego claims against individuals with more discrete involvement than Mr. Carpenter himself or the other turnover respondents. Thus, the District Court erred in dismissing Mr. Trudeau and Ms. Carpenter.

e. The District Court Erred because it Applied *Res Judicata* too Rigidly in Contravention of New York Law.

As explained, *supra*, New York takes a "pragmatic and flexible attitude toward [*res judicata*], recognizing that the doctrine, if applied too rigidly, could

work considerable injustice. *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111, 148 N.Y.S.3d 178, 170 N.E.3d 733 (2021)); *see also Boucher v. Dramstad*, 522 F. Supp. 604, 607 (D. Mont. 1981) ("[*Res judicata*] is intended to serve the aims of fairness and efficient judicial administration and need not be applied mechanically where those ends would not be served.") (internal citations omitted). The District Court erred by failing to consider the injustice caused by its overly rigorous application of *res judicata*.[17]

The District Court viewed the operative factual nexus under the transactional approach under the broadest terms possible. It considered all discovery and information gleaned regarding the Carpenter enterprise and his shell companies to be part of the transaction underlying the turnover proceedings, and that this information also informed the gravamen of the wrong. However, as Universitas has argued, this overly expansive view of the facts works considerable injustice. The District Court should properly have adopted the flexible approach described by New York law and determined that the operative factual nexus in analyzing the transactional approach to *res judicata* in this case to be narrower. Specifically, a

---

[17] Universitas addressed inequitable results and the flexibility of the *res judicata* doctrine in its briefing. It also provided the District Court with analysis and a direct citation to *Reilly* at the hearing that took place on February 1, 2023. (A-182:14-183:12.)

more flexible application consistent with New York law could have found that the transaction at issue and gravamen of the wrong for purposes of *res judicata* was the theft and concealment of the insurance proceeds themselves, instead of the District Court's far more expansive view.

The District Court found that declining to apply *res judicata* outright was inconsistent with public policy and precedent. (SPA-32.) The District Court also tacitly admitted that the result of its decision could be construed as "inequitable," as it could make collection even harder for Universitas. (SPA-32.) The District Court then reacknowledged the potential inequity of the result, as well as the inconsistent positions taken by the Charitable Trusts, who initially argued that the Southern District of New York had lacked jurisdiction over the turnover proceedings before arguing that *res judicata* applied—two completely incongruous positions. (SPA-63, n.13.) The inequitable result is further compounded by the fact that during the pendency of the underlying case, Mr. Carpenter and another of the judgment debtors were advancing arguments before the Southern District of New York and this Court that the Southern District lacked jurisdiction over the turnover motions. (A-110:12-16.) This Court rejected those arguments earlier this year, finding many of the challenges to be "frivolous or baseless." *Universitas Educ., LLC v. Grist Mill Capital, LLC et al.*, Nos. 21-2690(L), 21-2691, 2023 U.S. App. LEXIS 4257, *7 n.3 (2d Cir. Feb. 23, 2023).

However, despite acknowledging the potentially inequitable results, the District Court failed to take the pragmatic and flexible approach to *res judicata* available under New York law. Instead, it issued a decision that works "considerable injustice." Its decision penalizes Universitas for attempting to reasonably limit the scope of its initial turnover motions. Ultimately, the District Court held that mere knowledge of the entities in Mr. Carpenter's Benistar enterprise was sufficient for Universitas to have to bring claims against those entities, even if they never received stolen funds or were otherwise attenuated from the theft of the insurance proceeds. In essence, the District Court held that Universitas was required to bring alter ego claims against the hundreds of entities of which it was aware, or otherwise lose the ability to recover from them in the future. Such an action would in no way have formed a convenient trial unit, nor comported with the expectations of the parties to such a proceeding.

Moreover, the District Court's decision works considerable injustice by effectively rewarding Mr. Carpenter for the extent of his fraudulent conduct. Bringing actions against such a massive network of entities is unduly burdensome and unreasonable. Furthermore, it is the malfeasance and bad faith of Mr. Carpenter and his various entities and affiliates, including the Appellees, that has exploded this litigation into a decade-long war of attrition that has made collection extremely difficult. In over-rigorously applying *res judicata*, the District Court has created a

profoundly unjust result, inconsistent with New York law. In seeking to deny Universitas from allegedly having a second day in court, the District Court ultimately "deprived [it] of one," *Reilly*, 379 N.E. at 175, in direct contravention of the New York *res judicata* precedent. This was in error, and the judgment and decisions of the District Court must be reversed.

      f.  <u>The District Court Erred in Finding that the Southern District of New York would have exercised jurisdiction over the Alter Ego and other Equitable Claims in the Complaint and Amended Complaint.</u>

"[I]f alter ego claims are being pursued in an action pursuant to C.P.L.R. § 5225, the court may not simply exercise ancillary enforcement jurisdiction … and must make a separate determination of whether it has jurisdiction" over alter ego claims. *First Horizon Bank v. Moriarty-Gentile*, No. 10-CV-00289 (KAM)(RER), 2015 U.S. Dist. LEXIS 165695, at *11 (E.D.N.Y. 2015). R*es judicata* also cannot be properly applied if a court in the first action would have declined to exercise jurisdiction over a case. *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009). The Southern District of New York declined to exercise ancillary jurisdiction over an action to recover certain insurance policies held by a judgment debtor, largely citing the competing interests and the fact that it implicated third-party interests. *Universitas Educ*, 2015 U.S. Dist. LEXIS 435, at *11. District Court found that despite this, the District Court likely would have found that it had jurisdiction over all the claims in the Complaint and Amended Complaint. This was in error.

The alter ego and equitable claims, particularly those against BASI, GMP, and the other Appellees that own property would have implicated the same issues. BASI has substantial assets related to its business activities, including in servicing insurance, and would have potentially implicated numerous parties' rights if judgment was entered against them. GMP possessed property that it was renting. Making alter ego determinations or other determinations regarding its assets would also have necessarily implicated third party rights, such as those of Curaleaf, its tenant. (A-292 (noting that Curaleaf would suffer irreparable harm if injunctive relief was entered against Daniel Carpenter).)[18] Thus, the Southern District of New York's third turnover decision makes clear that it would not have exercised jurisdiction and heard all the claims in the Complaint and Amended Complaint, which would necessarily make *res judicata* inapplicable. Thus the District Court's judgment and orders must be reversed.

## II. <u>The District Court Erred in Holding that Universitas Could not Bring a Claim for Constructive Trust.</u>

The District Court erred in holding that Universitas could not bring a cause of action for constructive trust under Connecticut law. The District Court, relying on *Reed v. McCready*, held that constructive trust is merely a remedy, and not a separate cause of action. As a result, it dismissed the claims for constructive trust, but later

---

[18] The letter was addressed at the hearing that took place on February 1, 2023. (A-194:9-195:5.)

permitted Universitas to replead non-futile equitable claims against certain Appellees.

Connecticut courts routinely permit actions for constructive trust. *Lapegna v. Lapegna*, No. CV 216052641S, 2022 Conn. Super. LEXIS 2141, at *7 (Conn. Super. Sept. 22, 2022); *O'Leary v. Wells*, No. CV126026336, 2012 Conn. Super. LEXIS1802, at *15-*16 (Conn. Super. July 16, 2012). While the District Court cited to *Reed* for the proposition that there exists no clear appellate decision with respect to constructive trust as a cause of action, 2014 Conn. Super. LEXIS at *17, other courts in Connecticut have noted at least two appellate level cases that appear to have recognized constructive trust claims. *Unifoods S.A. de C.V. v. Magallanes*, No. No. CV206047191S, 2021 Conn. Super. LEXIS 1299 (Conn. Super. Aug. 12, 2021) (noting that these appellate decisions have discussed the "elements" of a constructive trust, suggesting its recognition of a cause of action) (citing *Gulack v. Gulack*, 620 A.2d 181 (1993)); *see also Cadle Co. v. Gabel*, 7944 A.2d 1029, 1035 n.9 (Conn. App. 2002) (referring to the count below as a constructive trust claim and affirming the trial court's refusal to dismiss the claim based on *res judicata*.) More recent Connecticut Superior Court cases also recognize the claim of constructive trust. *See Mason v. Mason*, No. CV195021013S, 2020 Conn. Super. LEXIS 903, at *6 (Conn. Super. Aug. 6, 2020) (rejecting the argument that constructive trusts can only be a remedy for unjust enrichment).

The recent Connecticut case law is clear. Superior Courts recognize actions for constructive trusts. Moreover, while there may be no appellate decision clearly ruling on constructive trusts, at least two appellate level Connecticut decisions recognized elements of a constructive trust claim or otherwise affirmed lower court rulings permitting actions for constructive trust. The District Court's narrow construction of constructive trusts as merely a remedy is inconsistent with more recent Connecticut decisions and the few appellate decisions that address the issue. As such, on *de novo* review, this Court should find that the District Court erred in dismissing the constructive trust claims against the Charitable Trusts, BASI, TPG, Molly Carpenter, Donald Trudeau, and GMP.

## CONCLUSION

For this, and all the aforementioned reasons, this Court should reverse the District Court's Judgment and Decisions on the Motions to Dismiss.

Dated: November 9, 2023

Respectfully submitted,

*/s/ Joseph L. Manson III*

Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

*Attorneys for Plaintiff-Appellant*
*Universitas Education, LLC*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4) because this brief contains 13705 words, excluding the Table of Contents, Table of Authorities, Disclosure Statements, and Certifications.

This document complies with the typeface and style requirements of Fed. R. App. P. 32(a) because this document uses a proportionally spaced typeface in size 14 font (Times New Roman) prepared using Microsoft Word.

*/s/ Joseph L. Manson III*
Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of November, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

<u>/s/ Joseph L. Manson III</u>