# 23-1207

IN THE

# United States Court of Appeals for the
# Second Circuit

UNIVERSITAS EDUCATION, LLC,

*Plaintiff-Appellant*

v.

BENISTAR, BENISTAR ADMIN SERVICES, INC., TPG GROUP INC., MOONSTONE PARTNERS, LLC, ALLIANCE CHARITABLE TRUST, PHOENIX CHARITABLE TRUST, CARPENTER CHARITABLE TRUST, DONALD TRUDEAU, MOLLY CARPENTER, JANE DOE, ENTITIES UNDER CONTROL OF MOLLY CARPENTER AND/OR DONALD TRUDEAU AND ENTITIES UNDER CONTROL OF JUDGMENT DEBTORS, GRIST MILL PARTNERS, LLC, GREYHOUND PARTNERS, LLC, 1&3 MILL POND PARTNERS, LLC, SEIR HILL PARTNERS, LLC, BIRCH HILL PARTNERS, LLC, CAROLINE MECKEL, STEVEN MECKEL, ATLANTIC CHARITABLE TRUST, AVON CHARITABLE TRUST, CARPENTER FINANCIAL GROUP, INC.,

*Defendant-Appellees.*

On Appeal from the United States District Court for the District of Connecticut

**BRIEF OF THE DEFENDANT-APPELLEES MOLLY CARPENTER, DONALD TRUDEAU, BENISTAR ADMIN SERVICES, INC. AND TPG GROUP, INC.**

Michael R. McPherson
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel: (860) 522-6103
Fax: (860) 548-0006

**Corporate Disclosure Statement**

Benistar Admin Services, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock. Moonstone Partners, LLC has no parent corporation and no publicly held corporation owns 10% or more of its stock (membership interest). TPG Group, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# Table of Contents

Table of Authorities ........................................................................ iv

Jurisdictional Statement ................................................................... 1

Standard of Review ......................................................................... 1

Statement of the Issues ................................................................... 2

Statement of the Case ..................................................................... 3

    A.    The underlying arbitration award and judgment against Nova Group, Inc. is over 10 years old ..................................... 4

    B.    Universitas' first post-judgment enforcement proceeding sought the turnover of insurance proceeds payable to Moonstone .................................................................. 5

    C.    Universitas' second post-judgment enforcement proceeding nets a judgment against entities that do not include the defendants.................................................................. 6

    D.    Six years later, Universitas improperly attempts to drag Molly Carpenter, Moonstone and BASI into the fray ............ 7

    E.    The Connecticut district court dismisses Universitas' claims against the undersigned defendants ........................................ 7

    F.    Universitas abandons its claims against the undersigned defendants.................................................................. 8

Summary of the Argument ...................................................... 10

**Argument** ................................................................................. 10

    A.    Because Universitas abandoned its claims in its Amended Complaint, this Court must dismiss its appeal as moot ......... 12

B.    Even if the constructive trust claim were before this Court, the district court was correct to dismiss it .................................... 14

C.    Even if they were before this Court, Universitas' alter ego claims *and* its constructive trust claim are barred by res judicata ................................................................................. 16

    1.    Federal law applies and does not allow an equitable exception to res judicata .............................................. 16

    2.    Even if this Court considered Universitas' argument regarding res judicata, the Court should reject it ......... 18

        a.    Because Universitas never raised its "convenient trial unit" argument below, it has waived it here ........................................................................ 19

        b.    The first turnover decision is res judicata as to the constructive trust claim against Molly Carpenter ........................................................................ 20

        c.    Universitas could have sought a constructive trust in the first turnover proceeding ......................... 23

        d.    The second turnover judgment is res judicata as to Universitas' alter ego claims ......................... 26

D.    Judge Swain did not rule in 2015 that she would have declined diversity jurisdiction over Universitas' alter ego claims in 2014 ................................................................................... 31

E.    Even if an equitable exception exists to res judicata, the district court's decision was not unjust or inequitable ........... 35

**Conclusion** ................................................................ 39

## Table of Authorities

**Federal Cases**

*Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*,
 305 F.3d 82 (2d Cir. 2002) ............................................................... 20

*Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.,*
 362 Fed. App'x. 151 (2d Cir. 2010) ................................................. 16

*Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc*., 8 F. Supp. 2d 372
 (S.D.N.Y. 1998) ................................................................................ 29

*Askins v. Doe No. 1,* 727 F.3d 248 (2d Cir. 2013) ............................... 10, 19

*Austin v. Ford Models, Inc.,* 149 F.3d 148 (2d Cir. 1998) *abrogated
 on other grounds by Swierkiewicz v. Sorema N.A.,*
 534 U.S. 506 (2002) .................................................................... 10, 12

*Biller v. Vegliante,* 24 F. App'x 73 (2d Cir. 2001) ................................. 1, 10

*Carney v. Lopez*, 933 F. Supp. 2d 365 (D. Conn. 2013) ........................... 15

*Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377 (D. Conn. 2007) ............. 15

*Chapco, Inc. v. Woodway USA, Inc*., 282 F. Supp. 3d 472
 (D. Conn. 2017) ............................................................................... 28

*De Ping Song v. Inhae Corp*., 578 F. App'x 22 (2d Cir. 2014) ................ 34

*EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621
 (2d Cir. 2007) ..................................................................................... 1

*Epperson v. Entm't Express, Inc*., 242 F.3d 100 (2d Cir. 2001) ............... 32

*Federated Dep't Stores Inc. v. Moitie*, 452 U.S. 394 (1981) .............. 11, 17

iv

*Gousse v. Giardullo*, 2021 WL 5626673 (2d Cir. Nov. 15, 2021)............. 12

*Greater N.Y. Metro. Food Council v. McGuire*, 6 F.3d 75 (2d Cir. 1993)  33

*Hansen v. Miller,* 52 F.4th 96 (2d Cir, 2022) ............................................... 12

*Howard Carr Companies, Inc. v. Cumberland Farms, Inc.*,
      833 F. App'x 922 (2d Cir. 2021)................................................. 16–17

*Iantosca v. Benistar Admin. Servs., Inc.*, No. 08-cv-11785
      (NMG)(D. Mass. June 21, 2013).......................................... 36, 37, 38

*Ibela v. Allied Universal*, 2022 WL 1418886 (2d Cir. May 5, 2022) ........ 12

*Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 493 F.3d 283
      (2d Cir. 2007) .............................................................................. 16, 17

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677
      (2d Cir. 2009) ...................................................................................... 35

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997) ..... 29

*Int'l Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir. 1977)................. 10, 12

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
      140 S. Ct. 1589 (2020) .............................................................. 11, 23

*Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.*,
      506 F. App'x 65 (2d Cir. 2012)........................................... 17, 18, 19

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)............... 16

*Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363 (2d Cir. 2018). 14

*Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636 (2d Cir. 2016) 21

v

*Mohamad v. Rajoub*, 767 F. App'x 91 (2d Cir. 2019) ......................... 11, 17

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000).. 24

*Morales v. New York City Dep't of Educ.*, 808 F. App'x 35
    (2d Cir. 2020) ...................................................................... 18, 23–24

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168
    (2d Cir. 2008) ............................................................................ 28, 29

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) ............................................ 31

*Rojas v Hum. Res. Admin.*, 2023 WL 6380820 (2d Cir. Oct. 2, 2023) ........ 1

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018) ............. 29

*United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at
    895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215
    (D. Conn. 2010) ........................................................................ 24–25

*United States v. Benitez*, 779 F.2d 135 (2d Cir. 1985) .............................. 25

*United States v. Lacoff*, 446 F. App'x 311 (2d Cir. 2011) ........................ 14

*United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992) ..................... 25

*Universitas Educ., LLC v. Grist Mill Cap., LLC*, 2023 WL 2170669
    (2d Cir. Feb. 23, 2023), *cert. denied sub nom Grist Mill Cap.,
    LLC v. Universitas Educ., LLC*, 2023 WL 6378492
    (U.S. Oct. 2, 2023).......................................................................... 32

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11 CIV. 1590-LTS-HBP,
    2012 WL 2045942 (S.D.N.Y. June 5, 2012).............................. 3, 4–5

vi

*Universitas Educ., LLC v. Nova Grp., Inc.,* 513 F. App'x 62 (2d Cir. 2013) ....................................................................................................... 5

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11 CIV. 1590-LTS-HBP, 2013 WL 6123104, at *7 (S.D.N.Y. Nov. 20, 2013) ......... 5–6, 20–23

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *1 (S.D.N.Y. Aug. 7, 2014) ................ 6–7, 26

*Universitas Educ., LLC v. Nova Grp., Inc*., No. 11-CV-1590-LTS-HBP, 2015 WL 57097 (S.D.N.Y. Jan. 5, 2015).................................. 31, 33

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP (March 31, 2020 S.D.N.Y.) ........................................................ 7, 34

*Universitas Educ., LLC v. Nova Grp., Inc*., No. 11-CV-1590-LTS, 2021 WL 4443962, at *3 (S.D.N.Y. Sept. 28, 2021) ...................... 32

*Wells Fargo Bank, N.A. v. Konover*, 2011 WL 1225986 (D. Conn. Mar. 28, 2011, *aff'd sum nom Wells Fargo Bank, N.A. v. Konover Dev. Corp*., 630 F. App'x 46 (2d Cir. 2015) .............. 26–27

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 933 F.2d 131 (2d Cir. 1991) ............................................................ 26

**State Cases**

*Cahaly v. Benistar Prop. Exh. Trust Co., Inc*., No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003).......................................... 36, 37, 38

*Doubet, LLC v. Trustees of Columbia Univ. in City of New York*, 934 N.Y.S.2d 33 (NY. Sup. Ct.), *adhered to on reargument*, 941 N.Y.S.2d 537 (N.Y. Sup. Ct. 2011), *aff'd*, 952 N.Y.2d 16 (N.Y. App. Div. 2012)...................................................................... 28

*Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620,
804 A.2d 180 (2002).......................................................................... 15

*Wendell Corp. Tr. v. Thurston*, 239 Conn. 109, 680 A.2d 1314 (1996) .... 15

*WBP Cent. Assocs., LLC v. DeCola,* 50 A.D.3d 693
(N.Y. App. 2d Dep't 2008).............................................................. 28

**Federal Statutes**

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 1332 ............................................................................. 1

28 U.S.C. § 1367(c) ...................................................................... 33

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6) ................................................................ 1

**State Statutes**

N.Y. C.P.L.R. § 5225(b) ...................................................... 20, 21

**Miscellaneous**

N.Y. CPLR § 5225 Practice Commentary C5225:6,
by David D. Siegel (McKinney 1978) ........................................... 21

**Jurisdictional Statement**

The defendants do not dispute the plaintiff's jurisdictional statement as it relates to the district court's diversity jurisdiction under 28 U.S.C. § 1332 and this Court's general appellate jurisdiction over the appeal under 28 U.S.C. § 1291 because the district court entered final judgment on August 8, 2023 (SA1) and the plaintiff filed its appeal [Doc. #380] on August 28, 2023.[1] However, the defendants contest this Court's appellate jurisdiction over the appeal as it pertains to them because the plaintiff abandoned its claims against the defendants. Thus, the plaintiff's appeal is moot, and this Court must dismiss it for lack of appellate jurisdiction. *Biller v. Vegliante*, 24 F. App'x 73, 76 (2d Cir. 2001).

**Standard of Review**

The defendants do not dispute the plaintiff's statement regarding this Court's standard of review. This Court reviews *de novo* the district court's decision granting the defendants' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), *Rojas v. Hum. Res. Admin.*, No. 22-2055-CV, 2023 WL 6380820, at *1 (2d Cir. Oct. 2, 2023), and the district court's application of res judicata. *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).

---

[1]    The defendants refer to the plaintiff's appendix and special appendix as "A" and "SA" respectively.

1

## Statement of the Issues

This appeal presents four main issues:

1.　**Appellate Jurisdiction**. Did the plaintiff waive and/or moot its right to appeal the district court's order dismissing all claims against the defendants when it purposely eliminated those claims from its operative Amended Complaint?

2.　**Preservation of issues**. Did the plaintiff waive its right to appeal certain aspects of the district court's order dismissing the "alter ego" claims against the defendants because it failed to raise below the argument it is now raising on appeal?

3.　**Constructive Trust**. Did the district court err when it held that a constructive trust is not a stand-alone cause of action but, rather, a remedy? If so, did the doctrine of res judicata bar the plaintiff's constructive trust claim against Molly Carpenter anyway?

4.　**Res Judicata.** Did the district court err when it held that the plaintiff's post-judgment enforcement proceedings before the Southern District of New York were res judicata as to the "alter ego" claims against the defendants in this case?

## Statement of the Case

Universitas Education, LLC commenced this post-judgment enforcement action in the United States District Court for the District of Connecticut in May 2020. Universitas seeks to further enforce a civil money judgment it obtained in 2012 in the Southern District of New York against Nova Group, Inc. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590-LTS-HBP, 2012 WL 2045942 (S.D.N.Y. June 5, 2012). Universitas first sued several individuals, trusts and companies that were not parties to the prior action, including the undersigned defendants, Molly Carpenter, Donald Trudeau, Benistar Admin Services, Inc. ("BASI"), TPG Group, Inc., and Moonstone Partners, LLC. Universitas asserted counts against all defendants based on theories of "alter ego" liability, constructive trust, and liability for attorneys' fees. (Compl.)(A1.)

All defendants moved to dismiss Universitas' complaint. On March 15, 2021, the district court (Meyer, J.) granted the undersigned defendants' motion to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6). (Mem.)(SA3.) The district court granted in part and denied in part the other defendants' motions to dismiss. The plaintiff then filed a motion for reconsideration [Doc. #117], which the district court denied on March 16, 2022. (Ruling)(SA38.) With the district court's leave, Universitas filed an amended complaint [Doc. #249] that eliminated the claims against the undersigned defendants and added new defendants, including the undersigned, Caroline and Steven Meckel.

3

The remaining defendants moved to dismiss Universitas' amended complaint. On August 2, 2023, the district court (Dooley, J.) granted those motions with prejudice (Mem.)(SA49) and entered judgment (SA1) on August 8, 2023. Universitas filed its Notice of Appeal [Doc. #380] on August 28, 2023. Universitas does not appeal the dismissal of the claims against the Meckels (*see* Pl.'s Br. at 8 n.10) and Moonstone Partners, LLC. Thus, the undersigned counsel for the Meckels and Moonstone Partners, LLC does not address it here.

## A. The underlying arbitration award and judgment against Nova Group, Inc. is over 10 years old.

Nova Group, Inc. was the trustee, sponsor, and fiduciary of the Charter Oak Welfare Benefit Plan. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590-LTS-HBP, 2012 WL 2045942 at *1 (S.D.N.Y. June 5, 2012). Holdings Capital Group, the employer of Sash Spencer, became a participating employer in the Plan. *Id*. Two insurance policies on Spencer's life, totaling $30 million, were placed into the Plan. *Id*. Spencer named Universitas as the sole, irrevocable beneficiary of the proceeds as Plan benefits. *Id*. In May 2009, after Spencer's death, the insurance carrier paid out $30 million in insurance proceeds to the Plan. *Id*.

Nova, however, denied Universitas' claim to the Plan death benefit. *Id*. The parties submitted their dispute to binding arbitration, after which the arbitrator issued an award finding Nova liable to Universitas in the amount of $26,558,308. *Id*. On June 5, 2012, the district court for the

4

Southern District of New York granted Universitas' petition to confirm the award and entered final judgment. *Id*. Thereafter, in March 2013, this Court affirmed the district court's judgment. *Universitas Educ., LLC v. Nova Grp., Inc*., 513 F. App'x 62, 63 (2d Cir. 2013).

**B.    Universitas' first post-judgment enforcement proceeding sought the turnover of insurance proceeds payable to Moonstone.**

In 2013, in accordance with New York law, Universitas moved the district court for a post-judgment turnover order to enforce its judgment and invalidate alleged fraudulent transfers that Nova had made to third parties. *See Universitas Educ., LLC v. Nova Grp., Inc*., No. 11 CIV. 1590-LTS-HBP, 2013 WL 6123104, at *7 (S.D.N.Y. Nov. 20, 2013). After a bench trial, the district court issued findings of fact, which focused on the actions of two of Nova's officers: Daniel Carpenter and Wayne Bursey. *See id*. at *1–2. The district court found that Daniel Carpenter "directly controlled material aspects of the affairs of Nova and the Charter Oak Trust during the relevant period." *Id*. at *3. The district court also found that Daniel Carpenter and Wayne Bursey transferred the Spencer life insurance proceeds from the Charter Oak Trust to Grist Mill Capital, LLC—a third-party company that Carpenter owned and Bursey managed. *Id*.

From there, the district court found, the Spencer life insurance proceeds were transferred in various amounts to other third-party companies that Daniel Carpenter also controlled, including Moonstone Partners, LLC. *Id*. at *4. The district court found that Moonstone had

received only $1.1 million of the life insurance proceeds, which it used to purchase a property in Rhode Island in 2009. *Id*. at *4–5. The Moonstone property later suffered storm damage in 2012 but was protected by flood insurance and property/casualty insurance. The insurer, USAA, was about to make a payment under the flood insurance policy, so Universitas sought an order requiring USAA to turn over to it the proceeds otherwise payable to Moonstone. *Id*. at *3, 6. Because the district court found that the property was "purchased and insured through fraudulent conveyances" of the Spencer life insurance proceeds, it granted Universitas' turnover petition. *Id*. at *12–13.

## C. Universitas' second post-judgment enforcement proceeding nets a judgment against entities that do not include the defendants.

In October 2013, before the district court issued its first turnover order, Universitas filed a second motion for a turnover order against Daniel Carpenter and "his affiliated entities": Grist Mill Capital, LLC; Grist Mill Holdings, LLC; the Grist Mill Trust Welfare Benefit Plan; Avon Capital, LLC; Hanover Trust Co.; Carpenter Financial Group; and Phoenix Capital Management, LLC. *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *1 (S.D.N.Y. Aug. 7, 2014). In August 2014, after an evidentiary hearing, the district court found that Daniel Carpenter had controlled and used those entities to fraudulently transfer among themselves the Spencer life insurance proceeds out of the Charter Oak Trust. *Id.* at *2–3. The district court thus found that Daniel

6

Carpenter and the affiliate entities were jointly and severally liable for "a sum of money equal to the portion of the [Spencer] Insurance Proceeds of which it was a transferee." *Id*. at *5.

**D.    Six years later, Universitas improperly attempts to drag Molly Carpenter, Moonstone and BASI into the fray.**

In March 2020, six years after the district court's 2014 judgment against Daniel Carpenter et al., Universitas filed improper letter motions with the district court, seeking additional money judgments against Molly Carpenter, Moonstone Partners, LLC and BASI as alleged "alter egos" of the judgment debtors. (*See* Order No. 661) *Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP (March 31, 2020 S.D.N.Y.). The defendants objected, and the district court denied Universitas' letter motions as improper, albeit without prejudice to refile using proper motions practice. *Id*. Universitas declined the district court's offer and filed the present action instead.

**E.    The Connecticut district court dismisses Universitas' claims against the undersigned defendants.**

Universitas filed the present action in May 2020 against Molly Carpenter; Donald Trudeau; BASI; TPG Group, Inc.; Moonstone Partners, LLC; Grist Mill Partners, LLC; Alliance Charitable Trust; Phoenix Charitable Trust; Atlantic Charitable Trust; Avon Charitable Trust; and Carpenter Charitable Trust. (Compl.)(A1.) Universitas asked the Court to: **(1)** pierce the corporate veil of Nova Group and the respective 2014

judgment debtors and hold the defendants liable for those judgments as their "alter egos." (Count One); **(2)** impose a constructive trust on the Spencer insurance proceeds allegedly received by the respective defendants (Counts Three to Six); and **(3)** require the defendants to pay Universitas' attorneys' fees incurred to enforce the judgments (Count Two).

All defendants moved to dismiss Universitas' complaint. On March 15, 2021, the district court (Meyer, J.) granted certain motions without prejudice and denied others. (Mem.)(SA3.) The district court dismissed the claim for attorneys' fees because there is no independent cause of action for attorneys' fees under Connecticut law. The district court also dismissed the constructive trust claims because a constructive trust is a remedy, not an independent cause of action. Last, the district court held that res judicata bars the alter ego claims against the undersigned defendants. The district court, however, denied the other defendants' motions to dismiss the alter ego claims on other grounds.

## F.   Universitas abandons its claims against the undersigned defendants.

Universitas filed a motion to reconsider [Doc. #117] the district court's ruling and filed a separate motion [Doc. #118] to amend its complaint. Universitas filed two versions of its proposed amended complaint, each contingent on how the district court ruled on the motion to reconsider. (Pl.'s Mot. [#118] at 2.) The first version, anticipating the district court would grant reconsideration and reinstate the claim, included

8

the dismissed alter ego claim against the undersigned defendants, while the second version omitted that claim if the district court denied reconsideration. (*Id.*)(Prop. Am. Compl. [Docs. #118-1, #118-3]). In *both* versions of the proposed amended complaint, Universitas withdrew its claims against Moonstone Partners, LLC, its count for attorneys' fees, and its constructive trust claims, converting them to unjust enrichment claims.

Both versions of the proposed amended complaint also sought to add new claims and new defendants including, among others, an unjust enrichment claim against Caroline Meckel and Steven Meckel. The defendants objected to the motion for reconsideration and the motion to amend. The district court denied Universitas' motion for reconsideration and granted, in part, Universitas' motion to amend its complaint. (Ruling) (SA38.) The district court did not allow Universitas to assert a new unjust enrichment claim against Molly Carpenter because it is barred by res judicata. (*Id.*) The district court did allow Universitas to add some of the new defendants including the Meckels. (*Id.*)

Universitas then filed its operative Amended Complaint [Doc. #249], which omitted all claims against Molly Carpenter, Donald Trudeau, BASI, TPG Group, Inc., and Moonstone Partners, LLC. The remaining defendants then filed motions to dismiss the Amended Complaint. The district court (Dooley, J.) granted those motions with prejudice on August 2, 2023 (Mem.)(SA49) and entered judgment on August 8, 2023 (SA1). Universitas then filed its Notice of Appeal [Doc. #380] on August 28, 2023.

## Summary of the Argument

This Court lacks appellate jurisdiction because Universitas purposely eliminated all claims against the defendants in its operative Amended Complaint. An amended complaint supersedes the original and renders it of no legal effect. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived …." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998). Because Universitas' appeal is moot, this Court must dismiss it for lack of appellate jurisdiction. *Biller v. Vegliante*, 24 F. App'x 73, 76 (2d Cir. 2001).

Universitas also raises an argument for the first time on appeal that it failed to raise below. Universitas never challenged res judicata on the ground that its alter ego claims would not have "formed a convenient trial unit" that "conformed to the parties' expectations" in the prior turnover proceedings. (Pl.'s Br. 39–52.) This Court will not consider an issue raised for the first time on appeal. *Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013). When the appellant attempts to raise a new argument that it did not raise below, waiver will bar the appellant from raising that issue on appeal. *Id.* Thus, this Court should not consider Universitas' argument.

Even if this Court were to consider Universitas' arguments, this Court should reject them for the following reasons:

1.     The district court correctly held that Universitas could have asserted its alter ego claims in the prior turnover proceedings. Res judicata

10

"prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). Res judicata is satisfied here; indeed, Universitas concedes, as it must, that the turnover proceedings were adjudicated on the merits between the same parties or their privies, and that nothing prevented it from asserting its "alter ego" claims there. (Pl.'s Br. at 39.) Contrary to Universitas' argument, the enforcement claims at issue here and in the prior proceedings arise out of the same transactions, *i.e.*, the fraudulent transfer of the Spencer insurance proceeds.

2.      The district court also correctly rejected Universitas' argument that an equitable exception exists to res judicata. It does not. *Mohamad v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019); *Federated Dep't Stores Inc. v. Moitie*, 452 U.S. 394, 401 (1981). And even if such an exception existed, the district court's decision was not unjust. The district court also correctly rejected Universitas' argument that Judge Swain would have lacked federal subject matter jurisdiction over alter ego claims in the turnover proceedings. Like here, diversity jurisdiction existed and would have allowed Judge Swain to hear alter ego claims.

3.      Even if a constructive trust were an independent cause of action under Connecticut law, which it is not, res judicata bars Universitas' constructive trust claim against Molly Carpenter anyway for the same reasons it barred the alter ego claims.

11

## Argument

**A.    Because Universitas abandoned its claims in its Amended Complaint, this Court must dismiss its appeal as moot.**

"It is well established that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived …." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Ultimately, the question of abandonment is one of intent; ordinarily it makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is permitted by the court." *Id. See, e.g.*, *Ibela v. Allied Universal*, 2022 WL 1418886, *1 (2d Cir. May 5, 2022)(holding that plaintiff abandoned claims "by failing to re-assert them in his amended complaint and, thus, those claims are not properly before us on appeal."); *Gousse v. Giardullo*, 2021 WL 5626673, *1 (2d Cir. Nov. 15, 2021)(same).

Here, the district court dismissed Universitas' claims against the undersigned defendants without prejudice to file a proposed amended complaint. (Mem.)(SA14, SA37.) Universitas thus filed a motion to amend its complaint, stating in the supporting memorandum:

12

The proposed Amended Complaint **eliminates** the claim for attorneys' fees, **the four constructive trust claims**, and the alter ego claim against Moonstone Partners, LLC ("Moonstone"), and brings unjust enrichment claims against the Charitable Trusts, Grist Mill Partners, LLC ("GM Partners"), and **Molly Carpenter in lieu of the constructive trust claims dismissed by the Court**.

(Mem. in Supp. Mot. to Amend [#118-5] at 1–2)(emphasis added).

[T]here are two proposed Amended Complaints – the difference between these complaints is that one includes the alter ego claims against TPG Group, Inc., Benistar Admin Services, Inc. ("BASI"), Molly Carpenter, and Donald Trudeau that were dismissed by the Court, and the other complaint does not. **Universitas is not seeking to relitigate these claims.** Universitas filed a motion for reconsideration and has a good faith belief that it will prevail on that motion and that these claims will thus be reinstated. Universitas therefore included these claims in one of the proposed Amended Complaints so as to preserve these claims for reinstatement. Should the Court grant Universitas leave to file an Amended Complaint and join additional defendants, Universitas will file the appropriate proposed Amended Complaint.

(*Id*. at 2 n.3)(emphasis added).

When the district court denied reconsideration and granted, in part, leave to amend, Universitas' operative Amended Complaint [#249] did not include *any* of the claims against Molly Carpenter, Donald Trudeau, BASI, and TPG Group, Inc. Despite this, Universitas challenges the district court's order dismissing the alter ego claims and constructive trust claim it abandoned in its Amended Complaint.

"It is hardly a novel proposition that an amended complaint ordinarily supersedes the original and renders it of no legal effect…. For that reason, the filing of an amended complaint will generally moot a pending appeal when, as here, the appeal would require the Court to analyze factual allegations contained in the superseded complaint." *Medidata Sols., Inc. v. Veeva Sys. Inc*., 748 F. App'x 363, 365 (2d Cir. 2018)(cleaned up)(dismissing appeal as moot). Universitas represented to the district court that it was eliminating its constructive trust claim altogether and would not relitigate the alter ego claim if the district court denied reconsideration. Thus, the Amended Complaint, which supersedes the original, eliminated these claims. Because Universitas abandoned its claims, this Court lacks appellate jurisdiction and must dismiss Universitas' appeal as moot. *Id*.

**B.    Even if the constructive trust claim were before this Court, the district court was correct to dismiss it.**

Under Connecticut law, "a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *United States v. Lacoff*, 446 F. App'x 311, 312–13 (2d Cir. 2011)(citation and quotation marks omitted). The Connecticut Supreme Court has stated that a constructive trust is not a "substantive cause[] of action" but, rather, a remedy, "the appropriateness of which would be left to the discretion of the trial court if the plaintiffs … were to

14

prevail at trial." *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 623 n.3 (2002). "A constructive trust is a flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court." *Wendell Corp. Tr. v. Thurston*, 239 Conn. 109, 120 (1996).

Unsurprisingly, the district courts of Connecticut have followed this rule. "[T]here is no separate cause of action under Connecticut law for constructive trust, but rather a constructive trust is a remedial device designed to prevent unjust enrichment." *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 383 (D. Conn. 2007)(citation omitted). *Accord*, *Carney v. Lopez*, 933 F. Supp. 2d 365, 384 (D. Conn. 2013)("A constructive trust is a remedy, not an independent substantive cause of action."). Despite this, Universitas argues that the district court here should have followed a few Connecticut trial court cases that have allowed constructive trust claims. (Pl.'s Br. at 58.) But as the district court noted, its decision is "in line with the Connecticut Supreme and Appellate Courts' consistent characterization of constructive trust as an equitable 'remedy.'" (Mem.)(SA13.) Because a constructive trust is not a substantive cause of action, the district court was correct to dismiss it.[2]

---

[2]     Universitas states that it asserted constructive trust claims against Molly Carpenter, Donald Trudeau, BASI, and TPG Group, Inc. (Pl.'s Br. at 59.) It did not. Universitas asserted a constructive trust claim against only Molly Carpenter. (*See* Compl., Count Three)(A32.)

**C.    Even if they were before this Court, Universitas' alter ego claims *and* its constructive trust claim are barred by res judicata.**

**1.    Federal law applies and does not allow an equitable exception to res judicata.**

Universitas litigated the two turnover proceedings at issue in the Southern District of New York. Although the district court here applied New York's law of res judicata—and Universitas advocates the same on appeal—this Court has indicated that federal law should govern. "We apply federal law in determining the preclusive effect of a federal judgment … and New York law in determining the preclusive effect of a New York State court judgment …." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)(citations omitted). "[I]t would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity." *Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 493 F.3d 283, 288 (2d Cir. 2007)(citation omitted). *See Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.,* 362 Fed. App'x. 151, 154 (2d Cir. 2010) (applying federal law of res judicata to decision of New York federal court sitting in diversity).

Indeed, although there appears to be "no discernible difference between federal and New York law concerning res judicata," *Marvel Characters, Inc*., 310 F.3d at 286, the Court must apply federal law when "the state law is incompatible with federal interests." *Howard Carr*

16

*Companies, Inc. v. Cumberland Farms, Inc*., 833 F. App'x 922, 923 (2d Cir. 2021)(citation omitted). *See Indus. Risk Insurer*, 493 F.3d 283 at 288 (noting that New York law and federal law of res judicata "do appear to diverge in some particulars"). "Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist*., 506 F. App'x 65, 67 (2d Cir. 2012)(cleaned up).

Universitas argues that the district court misapplied New York law by failing to consider "the injustice caused by its overly rigorous application of res judicata." (Pl.'s Br. at 53.) Not so. As the district court held, no equitable exception to res judicata exists under *federal* law. (Mem.)(SA32.)[3] "The doctrine of *res judicata* serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." *Mohamad v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019)(quoting *Federated Dep't Stores Inc. v. Moitie*, 452 U.S. 394, 401 (1981))(rejecting

---

[3] Universitas cites *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) for its statement of New York's more "pragmatic and flexible" approach to res judicata. (Pl.'s Br. at 36, 53.) *Hansen*, however, involved an underlying state court judgment, did not apply any equitable exception, and did not address how New York law conflicts with federal law on this issue. *Hansen* is thus inapposite.

17

argument that court should decline to apply res judicata on equitable grounds, because to do so is "expressly foreclosed by well-established precedent."). There is no error.

**2.** **Even if this Court considered Universitas' argument regarding res judicata, the Court should reject it.**

Res judicata bars re-litigation if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Morales v. New York City Dep't of Educ.*, 808 F. App'x 35, 37 (2d Cir. 2020)(citation omitted). "[T]he principle of privity bars re-litigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.*, 506 F. App'x 65, 68 (2d Cir. 2012) (citation omitted). Universitas concedes that the turnover proceedings were adjudicated on the merits between the same parties or their privies. (Pl.'s Br. at 27, 39.) Universitas also concedes that "no procedural bar existed" to prevent it from bringing its alter ego claims in the turnover proceedings before the Southern District of New York. (Pl.'s Br. at 39.)

Despite this, Universitas contests the district court's ruling that it could have raised its alter ego claims in those proceedings. (*Id*. at 28, 40.) "A matter could have been raised in a prior action if it emerges from the

18

same 'nucleus of operative facts' as any claim actually asserted in the prior action." *Malcolm*, 506 F. App'x at 67. "To determine whether two actions arise from the same nucleus of operative facts, we consider whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* at 67–68 (cleaned up).

Universitas argues that bringing its alter ego claims against the undersigned defendants in the turnover proceedings would not have formed a convenient trial unit that conformed to the parties' expectations. (Pl.'s Br. at 28.) This argument fails for the following reasons:

      **a.    Because Universitas never raised its "convenient trial unit" argument below, it has waived it here.**

It is well established that "an appellate court will not consider an issue raised for the first time on appeal." *Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013)(citation omitted). "The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, ... waiver will bar raising the issue on appeal." *Id*. (citation omitted). Here, Universitas never argued below that asserting its alter ego claims in the turnover proceedings would not have formed a convenient trial unit that conformed to the parties' expectations. Instead, it argued only that (1) applying res judicata would be inequitable and (2) the Southern District of New York had ruled in a third turnover proceeding that alter ego claims were "outside the court's

ancillary enforcement jurisdiction …." (Pl.'s Opp. Mem. [#90] at 8–11, 13–16.) Because Universitas attempts to raise a new argument on appeal, this Court should not even consider it.

> **b.      The first turnover decision is res judicata as to the constructive trust claim against Molly Carpenter.**

This Court is "entitled to affirm the district court on any ground for which there is support in the record, even if not adopted by the district court." *Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*, 305 F.3d 82, 88 (2d Cir. 2002). Here, Molly Carpenter moved to dismiss the constructive trust claim against her because res judicata bars it. (Memo. [Doc. #69] at 5.) The district court, however, dismissed the claim because a constructive trust is a remedy, not a substantive cause of action under Connecticut law. (Mem.)(SA14.) On appeal, Universitas only addresses the district court's holding and does not contest that, even if a constructive trust claim *is* a substantive cause of action, res judicata would still bar it.

Universitas filed its first post-judgment turnover proceeding pursuant to N.Y. C.P.L.R. § 5225(b). *See Universitas Educ., LLC v. Nova Grp., Inc*., No. 11 CIV. 1590 (LTS)(HBP), 2013 WL 6123104, * 7–8 (S.D.N.Y. Nov. 20, 2013). Moonstone Partners, LLC, Daniel Carpenter and Molly Carpenter were respondents in that turnover proceeding. *Id*. at *1. Section 5225(b) creates a procedural mechanism by which judgment creditors can enforce a money judgment against individuals *other than* the judgment

debtor. *Mitchell v. Garrison Protective Servs., Inc*., 819 F.3d 636, 640 (2d

Cir. 2016). Section 5225(b) states:

> Upon a special proceeding commenced by the judgment
> creditor, against a person in possession or custody of money or
> other personal property in which the judgment debtor has an
> interest, or against a person who is a transferee of money or
> other personal property from the judgment debtor, where it is
> shown that the judgment debtor is entitled to the possession of
> such property or that the judgment creditor's rights to the
> property are superior to those of the transferee.

N.Y. C.P.L.R. § 5225(b).

Judgment creditors "may use Section 5225(b) as the means to set

aside a transfer made by a judgment debtor to defraud his creditors."

*Universitas Educ., LLC*, 2013 WL 6123104, at *8 (citation omitted). "[I]f

any component of a transfer is deemed fraudulent, the entire transfer must

be voided in its entirety." *Id*. (citation omitted). "The court may 'collapse'

a series of related transactions and treat them as 'phases' of the same

transaction." *Id*. (citation omitted). "A special proceeding under CPLR

5225(b) is plenary. This means that any issue of fact arising in the

proceeding can be tried and adjudicated in the proceeding itself. A separate

plenary action need not be commenced to resolve the dispute." N.Y. CPLR

§ 5225, Practice Commentary C5225:6, by David D. Siegel (McKinney

1978). *Accord, Mitchell,* 819 F.3d at 640 (construing proceeding under §

5225(b) as a plenary action).

Universitas' first § 5225(b) proceeding sought an order requiring

USAA to turn over flood insurance proceeds otherwise payable to

Moonstone Partners, LLC, Molly Carpenter or Daniel Carpenter, "or any nominee or related party of any of them." *Universitas Educ., LLC*, 2013 WL 6123104 at \*1. After a bench trial, the district court found that (1) Daniel Carpenter "directly controlled material aspects of the affairs of Nova and the Charter Oak Trust during the relevant period." *Id*. at \*3; (2) Daniel Carpenter and Wayne Bursey transferred the Spencer life insurance proceeds from the Charter Oak Trust to Grist Mill Capital, LLC—a third-party company that Carpenter owned and Bursey managed. *Id*.; and (3) the Spencer life insurance proceeds were then fraudulently transferred in various amounts to other third-party companies that Daniel Carpenter also controlled, including Moonstone Partners, LLC. *Id*. at \*4.

The district court further found:

> Mr. Carpenter, through his corporate shell Caroline Financial, and his wife, Ms. Carpenter, formed Moonstone Partners, LLC on April 20, 2009. Ms. Carpenter purportedly holds 99% of the ownership interest of Moonstone, however, all documentary evidence and the testimony suggest that Mr. Carpenter acted on the company's behalf in connection with the receipt of funds and the purchase of the [Rhode Island] Property. At the time of the bench trial, and at all relevant times beforehand, Moonstone had no employees or operations. Its sole purpose appears to have been the purchase of the [Rhode Island] Property.

*Id.* at \*5.

The district court thus concluded that Moonstone had purchased and insured the Rhode Island property "through fraudulent conveyances" of the Spencer life insurance proceeds from Nova. *Id*. at \*12. Invalidating these fraudulent conveyances, the district court found that Nova, as the judgment

debtor, thus had an interest in the property and any flood insurance proceeds arising from damage thereto. *Id*. at *13. The district court ruled that Universitas, as the judgment creditor, was therefore entitled to the USAA proceeds. *Id*. Because the proceeding involved the same parties, *i.e.*, Universitas and Molly Carpenter, and was adjudicated on the merits, the first two elements for res judicata are satisfied.

### c. Universitas could have sought a constructive trust in the first turnover proceeding.

Res judicata "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc*., 140 S. Ct. 1589, 1594 (2020). If the second suit involves the "same claim" as the first suit between the same parties, res judicata bars re-litigation of all grounds for recovery that were previously available, "regardless of whether they were asserted or determined in the prior proceeding." *Id*. at 1595. "Suits involve the same claim (or 'cause of action') when they 'aris[e] from the same transaction' … or involve a 'common nucleus of operative facts.'" *Id*. at 1595 (citations omitted). "It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame her complaint." *Morales v. New York City Dep't of Educ*., 808 F. App'x 35, 37 (2d Cir. 2020)(citation omitted).

When determining the identity of the two claims, the Second Circuit considers "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* (citation omitted.) "'Transaction' must be given a flexible, common-sense construction that recognizes the reality of the situation." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 289 (2d Cir. 2000). Indeed, res judicata "is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event." *Id.* (citation omitted).

Universitas seeks a constructive trust on the same Spencer insurance proceeds that Moonstone Partners, LLC used to purchase the Rhode Island property at issue in the first turnover proceeding. Universitas even alleges as a basis for a constructive trust against Molly Carpenter that "[Daniel] Carpenter caused Moonstone to purchase the Carpenters' vacation property with fraudulently conveyed Spencer insurance proceeds." (Compl., Count Three ¶ 191)(A33.) A constructive trust arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215, 227 (D. Conn. 2010)(citation omitted).

Before a constructive trust may be imposed, the party seeking the constructive trust "must trace his own property into a product in the hands of the wrongdoer." *Id*. at 228. (quoting *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)). "The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets." *Id*. at 227–28 (quoting *United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992)). Thus, "an entity who wishes to have a constructive trust established on its behalf must be able to trace its funds to the property over which the trust will be established." *Id*.

The district court in the first turnover proceeding found that Moonstone had received the same Spencer insurance proceeds at issue here through fraudulent conveyances and, thus, did not have a legal right to them. In doing so, the district court also considered Molly Carpenter's involvement with Moonstone relative to its receipt of those proceeds. The proceeding involved virtually the same legal theory with the same parties, property, transactions, and events. Seeking a constructive trust against Molly Carpenter—who was already a respondent—certainly would have formed a convenient trial unit that conformed to the parties' expectations. Because Universitas could have sought a constructive trust in the turnover proceeding, res judicata bars its claim.

**d.** **The second turnover judgment is res judicata as to Universitas' alter ego claims.**

Universitas does not dispute that the district court's 2014 judgment against Daniel Carpenter and his "affiliated entities" was adjudicated on the merits. (Pl.'s Br. at 27.) *See Universitas Educ., LLC v. Nova Grp., Inc*., No. 11CV1590-LTS-HBP, 2014 WL 3883371, *1 (S.D.N.Y. Aug. 7, 2014). After conducting an evidentiary hearing, the district court, relying on its findings in the first turnover proceeding, found that Daniel Carpenter controlled and used those "affiliated entities" to fraudulently transfer among themselves the Spencer life insurance proceeds out of the Charter Oak Trust. *Id.* at *2–3. The district court thus found that Daniel Carpenter and the subject affiliate entities were jointly and severally liable for "a sum of money equal to the portion of the [Spencer] Insurance Proceeds of which it was a transferee." *Id*. at *5.

Universitas also does not dispute that a judgment against a debtor can be res judicata as to a subsequent veil-piercing claim against the debtor's alleged "alter ego" even when the alter ego was not an actual party to the prior action. (Pl.'s Br. at 27, 37.) *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 933 F.2d 131, 142–43 (2d Cir. 1991). This is so because, *if* the plaintiff can prove that the defendants are in fact alter egos of the debtor, "the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity." *Id*. *Accord, Wells Fargo Bank, N.A. v.*

26

*Konover*, 2011 WL 1225986, *29–30 (D. Conn. Mar. 28, 2011), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp*., 630 F. App'x 46 (2d Cir. 2015)(applying res judicata to prior judgment against debtors because, if plaintiff creditor prevailed on its post-judgment alter ego claim, the defendants would be considered "parties" to the prior action).

Universitas also concedes that: (1) as alleged alter egos, the undersigned defendants are in privity with the respondents in the second turnover proceeding; and (2) "no procedural bar existed" to prevent it from bringing its alter ego claims in that proceeding. (Pl.'s Br. at 39.) Even so, Universitas argues that bringing its alter ego claims would not have formed a convenient trial unit that conformed to the parties' expectations. (*Id*. at 40.) According to Universitas, this is so because Daniel Carpenter was not a judgment debtor until the district court entered judgment against him in the second turnover proceeding (*Id*. at 42); BASI and TPG Group, Inc. never received or transferred any of the Spencer insurance proceeds (*Id*. at 43–45); and Molly Carpenter and Donald Trudeau were not as involved as Daniel Carpenter in the turnover proceedings and did not "exercise any authority or ownership" over the judgment debtors. (*Id.* at 51–52.)

Universitas' argument misses the mark by a longshot.

First, the tautology that Dan Carpenter was not a judgment debtor until he was a judgment debtor is unavailing. Universitas' ability to bring its alter ego claim was not contingent on whether the district court had entered judgment against the turnover respondents. A judgment creditor

27

may bring concurrent claims seeking a money judgment against a turnover respondent and its alleged alter ego in the same § 5225(b) proceeding. *See Doubet, LLC v. Trustees of Columbia Univ. in City of New York*, 934 N.Y.S.2d 33 (N.Y. Sup. Ct.), *adhered to on reargument*, 941 N.Y.S.2d 537 (N.Y. Sup. Ct. 2011), *aff'd*, 952 N.Y.S.2d 16 (N.Y. App. Div. 2012). (entering money judgment in § 5225(b) proceeding against respondent garnishee for violating restraining notices and ruling that plaintiff had not proven its concurrent claim that co-respondents were liable for that debt as garnishee's alter egos). The district court here got this right, stating "[t]urnover petitioners regularly bring alter ego or veil piercing claims against respondents as part of a special proceeding pursuant to CPLR § 5225(b) to set aside the fraudulent conveyance of assets." (Mem.)(SA26) (citing *WBP Cent. Assocs., LLC v. DeCola*, 50 A.D.3d 693, 694 (N.Y App. 2d Dep't 2008)).

Second, that the undersigned defendants never received or transferred any Spencer insurance proceeds is the reason why Universitas needs an alter ego claim at all. Under the traditional approach to veil piercing, a court may disregard the corporate fiction to "require an owner to answer for the entity's debts." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008)(applying Delaware law).[4] In

---

[4]    Because BASI and TPG Group, Inc. are incorporated in Delaware, Delaware law applies when determining whether to pierce their corporate veils. *See Chapco, Inc. v. Woodway USA, Inc*., 282 F. Supp. 3d 472, 481 (D. Conn. 2017).

contrast, under a "reverse" veil-piercing theory, the court "attaches liability to the *entity* for a judgment against the individuals who hold an ownership interest in that entity." *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 385, 386 (4th Cir. 2018). The test for an alter ego claim focuses on "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc.,* 537 F.3d at 177.

An alter ego claim is an equitable remedy that seeks to hold the alleged alter ego liable for the *respondent's* debt only because the two entities are *indistinguishable*. *See Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc*., 8 F. Supp. 2d 372, 377 (S.D.N.Y. 1998)("Because an alter ego is considered an indistinguishable entity, jurisdiction over one company constitutes jurisdiction over its alter egos."). Thus, the transaction or series of transactions involved in Universitas' alter ego claim and the turnover proceedings *are the same*. "A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Interoceanica Corp. v. Sound Pilots, Inc*., 107 F.3d 86, 91 (2d Cir. 1997).

The turnover proceedings before Judge Swain focused on Daniel Carpenter's same alleged fraudulent conduct and his control of his "affiliated entities" to defraud Universitas out of the Spencer life insurance

proceeds. As the district court here found, "Universitas relies on these fraudulent transfers as a core reason why the [undersigned] Defendants are Daniel Carpenter and the other judgment debtors' alter egos." (Mem.) (SA29.) Consistent with the law of res judicata—under both New York and federal principles—the district court correctly found that the claims here satisfy the transactional analysis:

> It is also evident from the pleadings that the alter ego claims against the [undersigned] Defendants arise from the same "transaction or series of transactions," and that they would have formed a "convenient trial unit." … Universitas's alter ego claims against the [undersigned] Defendants rely heavily on factual allegations drawn from the turnover proceedings before Judge Swain and from even earlier litigation involving Daniel Carpenter and his entities.

> Indeed, there are no factual allegations related to Universitas's alter ego claim that appear to be related to a different series of transactions or to events that took place subsequent to the August 2014 judgment in the prior turnover proceeding.

> \*\*\*

> In addition, the gravamen of Universitas's allegations against the [undersigned] Defendants relates to the fraudulent conveyance of the Spencer life insurance proceeds and Daniel Carpenter's use of alter egos to prevent Universitas from enforcing its arbitration award.

(*Id*. at SA29, SA30.)

The fraudulent conveyance claims in the turnover proceedings *necessarily* involved the same transactions, evidence and essential facts to prove that the defendants should be liable for those conveyances as the transferees-cum-judgment-debtors' alter egos. This, as the district court

here correctly found, would have formed a "convenient trial unit" for Judge Swain when she invalidated those transfers and entered judgment against the respondents.[5] And it certainly would have conformed to the parties' expectations to try these issues together. The question for the transactional test is "whether the [current] claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). Because Universitas' alter ego claims were sufficiently related to its claims in the turnover proceedings, and the other elements are satisfied, res judicata bars those claims.

**D.    Judge Swain did not rule in 2015 that she would have declined diversity jurisdiction over Universitas' alter ego claims in 2014.**

Universitas argues that res judicata cannot apply because the Southern District of New York (Swain, J.) declined to exercise *ancillary* jurisdiction over a *third* turnover proceeding against Grist Mill Trust in 2015. (Pl.'s Br. at 56–57)(citing *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11-CV-1590-LTS-HBP, 2015 WL 57097 (S.D.N.Y. Jan. 5, 2015)). Universitas recognizes that Judge Swain would have *had* jurisdiction if a separate basis for subject matter jurisdiction, *e.g*., diversity, existed. (*See*

---

[5]    It is worth remembering that Judge Swain only entered judgment against the respondents because they had dissipated the Spencer insurance proceeds. "New York law permits a judgment creditor to obtain a money judgment in lieu of turnover of specific property where, as here, recipients of fraudulent conveyances have dissipated the transferred assets." *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *9 (S.D.N.Y. Aug. 7, 2014).

*id.* at 56.) *Epperson v. Entm't Express, Inc*., 242 F.3d 100, 109 (2d Cir. 2001)(stating that diversity jurisdiction would have allowed alter ego claim in ancillary enforcement proceeding). As the district court here found, because *diversity* jurisdiction existed, "it is clear that Judge Swain would have had subject matter jurisdiction over the alter ego claims in the 2014 proceeding for the same reason that this Court has subject matter jurisdiction over the instant claims." (Mem.)(SA27–SA28.)

Universitas misrepresents Judge Swain's decision. Judge Swain did not "make clear" that she would have declined to exercise diversity jurisdiction over alter ego claims in the 2014 proceedings. (Pl.'s Br. at 57.) As the district court here noted: "Judge Swain never expressly held that she did not have jurisdiction over alter ego claims." (Mem.)(SA25.) In fact, the opposite is true. When certain judgment debtors moved to vacate that 2014 judgment, Judge Swain stated that she had "found that [she] had subject matter jurisdiction" over the original proceeding. *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11-CV-1590-LTS, 2021 WL 4443962, at *3 (S.D.N.Y. Sept. 28, 2021). This Court recognized the same when affirming her decision on appeal: "[Judge Swain] also concluded that '[she] had subject matter jurisdiction' to enter the 2014 Judgment *as a means of enforcing [her] prior judgment*." *Universitas Educ., LLC v. Grist Mill Cap., LLC*, 2023 WL 2170669, *1 (2d Cir. Feb. 23, 2023)(emphasis added), *cert. denied sub nom*. *Grist Mill Cap., LLC v. Universitas Educ., LLC*, 2023 WL 6378492 (U.S. Oct. 2, 2023).

Further, although a district court may, in its discretion, decline to exercise *ancillary* jurisdiction, *see* 28 U.S.C. § 1367(c), it does not have the same latitude when, like here, a separate basis for federal jurisdiction exists. Absent exceptional circumstances, "[f]ederal district courts have an unflagging duty to adjudicate matters properly within their jurisdiction, and are not to decline jurisdiction simply because the issues presented may be decided in another forum." *Greater N.Y. Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir. 1993).

Universitas did not even assert an alter ego claim in that third turnover proceeding against Grist Mill Trust. Rather, Grist Mill Trust and several non-parties filed various motions asking Judge Swain to modify certain restraining notices that impaired Grist Mill Trust's ability to pay insurance benefits and transfer insurance policies to the non-party movants-beneficiaries. *Universitas Educ., LLC,* 2015 WL 57097 at *1. Universitas moved for an order requiring GMT to turnover one of those policies. *Id*. There was no claim that any of the movants had received through fraudulent transfers any Spencer insurance proceeds or other funds to which Universitas was entitled.

That Universitas never asserted an alter ego claim in that proceeding and, thus, never argued for subject matter jurisdiction, further undermines its argument. As the party asserting the Court's enforcement jurisdiction, Universitas bore the burden of proving it. "It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of

33

establishing the contrary rests upon the party asserting jurisdiction"
*De Ping Song v. Inhae Corp*., 578 F. App'x 22, 23 (2d Cir. 2014)(citation
omitted). "Where a new substantive theory … is advanced to establish
liability as to a new party, some independent ground is necessary to assume
federal jurisdiction over the claim." *Id*. The independent ground for
jurisdiction over the alter ego claims would have been diversity.

Universitas' own actions also belie its argument. In March 2020,
Universitas sought to invoke Judge Swain's jurisdiction when it filed
improper post-judgment letter motions seeking to hold the defendants
liable for the 2014 judgment as the respondents' alter egos. (*See* Order No.
661.) *Universitas Educ., LLC v. Nova Grp., Inc*., No. 11CV1590-LTS-HBP
(March 31, 2020 S.D.N.Y.). To be sure, Universitas would not have filed
such motions under § 5225(b) if it believed that Judge Swain's 2015 order
precluded jurisdiction over its alter ego claims. Further, if Judge Swain had
so intended, she would not have given Universitas the opportunity to meet
its burden of establishing jurisdiction over those claims. Judge Swain
denied Universitas' letter motions as improper, but without prejudice to
refile using proper motions practice addressing, among other things, the
jurisdictional concerns *Id.*  Universitas declined Judge Swain's invitation,
preferring instead to file this civil action. Universitas cannot now claim that
Judge Swain somehow precluded it from asserting those alter ego claims in
the 2014 turnover proceeding.

**E.    Even if an equitable exception exists to res judicata, the district court's decision was not unjust or inequitable.**

Universitas takes great pains to conflate the undersigned defendants with Daniel Carpenter, the 2014 judgment debtors and the co-defendants in this case. This Court should ignore the comparison. Despite Universitas' efforts to convince this Court otherwise, Molly Carpenter, Donald Trudeau, BASI and TPG Group, Inc. are not guilty by association of Daniel Carpenter's or any other party's fraudulent conduct or "bad faith, vexatious litigation tactics" in this case or anywhere else Universitas has sought to enforce its judgment. (Pl.'s Br. at 2.) *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)(plaintiffs asserting fraud claims against multiple defendants "must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."). Further, the undersigned defendants have not engaged in any "dilatory and bad faith tactics" or "discovery abuse," or "conceal[ed] assets," in "this litigation," and no court has found that they did. (Pl.'s Br. at 32.) The district court saw through Universitas' specious argument, and this Court should too.

Universitas also tries to create a false sense of injustice by arguing that the district court's decision unfairly required it to bring a turnover/alter ego proceeding "against hundreds of companies, no matter how attenuated those entities were from the transfer of the stolen insurance proceeds …." (Pl's Br. at 33.) The district court's decision requires no such thing. Molly

35

Carpenter, Donald Trudeau, TPG Group, Inc. and BASI were not four inconspicuous entities buried in a list of "hundreds" of potential targets whose alleged connection to the Spencer insurance proceeds was "attenuated" or unclear to Universitas; rather, Universitas had been pursuing these defendants well before the turnover proceedings.

As the district court found, Universitas' alter ego claims "rely heavily on factual allegations drawn from the turnover proceedings before Judge Swain and from even earlier litigation involving Daniel Carpenter and his entities." (Mem.)(SA25.) This "earlier litigation" consisted primarily of decisions in two Massachusetts cases issued *before* the turnover proceedings. *See Cahaly v. Benistar Prop. Exh. Trust Co., Inc*., No. 01-0116BLS2 (Mass. Super. Ct.) and *Iantosca v. Benistar Admin. Servs., Inc*., No. 08-cv-11785 (NMG)(D. Mass.). In fact, when seeking a prejudgment remedy in this case, Universitas argued that the findings in those Massachusetts cases alone are sufficient to establish alter ego liability here, so much so that the defendants are "estopped" from denying it. (Pl.'s Mem. Supp. PJR [#9-1] at 8.)

Indeed, Universitas claims that "BASI was found to be Mr. Carpenter's alter ego in 2003" and, because the two were "never sufficiently disentangled," they *remain* alter egos for purposes of establishing the same liability here. (Pl.'s Reply [#62] to Opp. to PJR at 3–

4)(citing *Cahaly,* No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003)).[6]

Universitas also relies on these Massachusetts cases to attach alter ego

liability to Molly Carpenter:

> [Molly] Carpenter is the Chairman and sole Director of BASI,
> (*see* PJR App. Ex. 37), and BASI is an alter ego of [Molly]
> Carpenter. *See Cahaly v. Benistar Prop. Exh. Trust Co., Inc.*,
> No. 01-0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). BASI is
> also an alter ego of Daniel Carpenter. *See Iantosca v. Benistar
> Admin. Servs., Inc.*, No. 08-cv-11785 (NMG)(D. Mass. June 21,
> 2013); *Cahaly v. Benistar Prop. Exh. Trust Co., Inc.*, No. 01-
> 0116BLS2 (Mass. Super. Ct. Sep. 23, 2003). Consequently,
> there is probable cause to support Universitas' claim that BASI
> is an alter ego of Daniel Carpenter, and that in turn, Molly
> Carpenter is an alter ego of BASI.

(Pl.'s Mem. Supp. PJR [#9-1] at 10.)[7] And as this Court can easily verify,

Universitas' complaint and filings are replete with other allegations relying

on these pre-turnover-proceeding Massachusetts cases to establish alter ego

liability. (*See id.* at 5–6, 10); (Compl. [A1] ¶¶ 76, 88, 97, 131, 132.)

Universitas' overt reliance on the earlier Massachusetts decisions

belies its argument. These claims include, but are not limited to (with

emphasis added):

---

[6]     The defendants do not concede Universitas' allegations or its
characterization of the findings in the Massachusetts cases, nor do they
concede that those cases have any bearing on whether alter ego liability
exists in *this* case. Those cases, for whatever they are worth, demonstrate
that Universitas had knowledge of and was pursuing the defendants well
before the turnover proceedings in New York.

[7]     It is noteworthy that Universitas argued that the Massachusetts
decisions alone provided enough evidence of alter ego liability to clear the
low "probable cause" threshold for a prejudgment remedy in this case.

- "In September 2003 **numerous Benistar entities** were found to be alter egos of Daniel Carpenter in litigation concerning the Benistar property exchange." (Compl. [A1] ¶ 76)(referring to *Cahaly v. Benistar Prop. Exh. Trust Co., Inc*., No. 01-0116BLS2 (Mass. Super. Ct. Sept. 23, 2003).

- "BASI is purportedly owned by an Employee Stock Ownership Program ('ESOP'). Upon information and belief, **the BASI ESOP is a sham**. The Commonwealth of Massachusetts found the BASI ESOP to be illegitimate—in truth BASI is a wholly owned subsidiary of Benistar Ltd. and/or Benistar Group, Ltd. This finding was upheld on appeal by the Supreme Court of Massachusetts." (Compl. [A1] ¶ 97).

- "**BASI fraudulently transferred its interest in settlement proceeds in order to conceal and/or shield these proceeds from Mr. Carpenter's creditors**. *See Iantosca v. Benistar Admin. Servs., Inc*. Case No. 08-cv-11785 (NMG)(D. Mass. June 21, 2013)." (Pl.'s Mem. Supp. PJR [#9-1] at 5.)

- "In turn, **BASI has fraudulently transferred assets in order to frustrate Mr. Carpenter's creditors**. *See Iantosca v. Benistar Admin. Servs., Inc*. Case No. 08-cv-11785 (NMG)(D. Mass. June 21, 2013)." (*Id*. at 6.)

- "[Molly] Carpenter has **personally engaged in fraud** by, inter alia, converting Benistar investors' money for her personal benefit. *See Cahaly v. Benistar Prop. Exch. Trust Co., Inc*. Case No. 01-0075 (Mass. Sup. Ct. Nov. 21, 2001)." (*Id*.)

- "Courts previously enjoined Molly Carpenter, *inter alia*, as a result of the 'substantial risk that, unless enjoined, **defendants will dissipate or conceal the assets**….' *See Iantosca v. Benistar Admin Services, Inc*., Case No. 08-cv-11785 (NMG)(D. Mass. Nov. 21, 2008)." (*Id*.)

- "Benistar repeatedly transferred the interest in settlement proceeds subject to a reach-and-apply proceeding against various Benistar entities. The District of Massachusetts found that these transfers of

interest in the settlement proceeds **were fraudulent transfers and further found that Benistar 'is using the corporate form to perpetrate a fraud.'"** (Compl. [A1] ¶ 88.)

The district court here (correctly) credited Universitas' admitted knowledge about the undersigned defendants and, when denying reconsideration, noted that "Universitas does not dispute any of this." (Ruling)(SA43)("In fact, Universitas has argued that it had 'probable cause' for some of its new alter ego claims based on revelations from 2013 and 2003 court decisions.") Res judicata, the district court held, "bars Universitas' claims … because the company knew *enough* to bring its claims earlier—not because it knew *everything*." *Id*. Nothing about this decision was unjust, and Universitas' argument to the contrary fails and should be rejected. There is no error.

### Conclusion

Wherefore, this Court should affirm the district court's judgment of dismissal in favor of the defendants.

Respectfully submitted,

By: /s/ *Michael R. McPherson*
Michael R. McPherson, Esq.
mcpherson@halloransage.com
HALLORAN & SAGE, LLP
225 Asylum Street
Hartford, CT 06103
Tel: (860) 241-4079
Fax: (860) 548-0006

39

*Counsel for the Defendants, Molly
Carpenter, Donald Trudeau,
Benistar Admin Services, Inc., TPG
Group, Inc., Moonstone Partners,
LLC, Caroline Meckel and Steven
Meckel*

## Certificate of Compliance and Service

I hereby certify the following: **(1)** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font; **(2)** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,238 words, excluding the parts of the brief exempted by Fed. R. App. 32(f); **(3)** I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit on December 14, 2023 by using the appellate CM/ECF system; and **(4)** All participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/Michael R. McPherson*
Michael R. McPherson

**Addendum A**

McKinney's Consolidated Laws of New York Annotated
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 52. Enforcement of Money Judgments (Refs & Annos)

McKinney's CPLR § 5225

§ 5225. Payment or delivery of property of judgment debtor

Currentness

(a) Property in the possession of judgment debtor. Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Notice of the motion shall be served on the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.

(b) Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.

(c) Documents to effect payment or delivery. The court may order any person to execute and deliver any document necessary to effect payment or delivery.

**Credits**
(Formerly § 5224, L.1962, c. 308. Renumbered 5225, L.1962, c. 315, § 5. Amended L.1964, c. 388, § 25.)

**Editors' Notes**

SUPPLEMENTARY PRACTICE COMMENTARIES

by Richard C. Reilly

**2022**

**C5225:2 Property or Money in Judgment Debtor's Possession**

Pursuant to CPLR 5225 "where it is shown that [a] judgment debtor is in possession or custody of money or other property in which he has an interest, the court shall order that the judgment debtor pay the money ... to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

The 2019 update under this caption cites the case of *Borges v. Placeres* (61 Misc.3d 1220(A) [2018]). *Borges*, which includes an extensive overview of a court's broad powers under CPLR 5240, involved a judgment creditor's attempt to compel assignment--to the judgment creditor rather than a sheriff--of the judgment debtor's potential legal malpractice claim against the judgment debtor's former attorney (and friend). The judgment debtor opposed having the claim turned over to the judgment creditor; and instead wanted it transferred to the sheriff, in the hopes that the judgment debtor could raise sufficient funds to buy it himself at auction.

Recognizing that CPLR 5240 grants a court " 'substantial authority to order equitable relief,' " and finding that the equities favored delivery of the malpractice claim in light of the judgment debtor's ongoing attempts to frustrate the judgment creditor's enforcement efforts--the court ordered the assignment to the judgment creditor.

For a recent Appellate Division decision relying on CPLR 5240 to similarly direct delivery of property (other than money) to the judgment creditor, rather than a designated sheriff, *see 79 Madison LLC v. Ebrahimzadeh* (203 A.D.3d 589 [1st Dept. 2022])--involving delivery of a judgment debtor's membership interest in a limited liability company. Rejecting the judgment debtor's argument that the judgment creditor was limited to a charging order, and noting that an interest in an LLC "is clearly assignable and transferable," the Court concludes that although § 607 permits a judgment creditor to obtain a charging lien, that it is not a judgment creditor's "exclusive remedy." Addressing the judgment debtor's argument that the delivery of the membership interest itself would result in a windfall, the Court noted that the judgment debtor "could avoid this result" by simply satisfying the judgment; which the record indicated the judgment debtor had the financial wherewithal to do.

**2019**

**C5225:2 Property of Money in Judgment Debtor's Possession**

A distinction when property rather than money is involved is that even if the CPLR 5225(a) motion succeeds, and the judgment debtor surrenders the property, it will generally have to be sold and thereby converted into money to pay the judgment. CPLR 5225(a) therefore provides that property reached through its procedures is to be delivered to the sheriff, who will then sell the property, rather than to the judgment creditor:

where it is shown that the judgment debtor is in possession or custody of money or other personal property ... the court shall order that the judgment debtor pay the money ... to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property ... to a designated sheriff.

What if the value of the property in a debtor's possession is intangible or uncertain--and would afford the judgment creditor a better opportunity to enforce its judgment if it was transferred directly to the judgment creditor, rather than transferred to the sheriff to be sold at auction? CPLR 5240, which gives a court broad discretionary powers to "extend[ ] or modify[ ] the use of any enforcement procedure," allows a court to provide for just that. So holds the New York City Civil Court in *Borges v. Placeres*, (61 Misc.3d 1220(A) [2018]).

*Borges*, which includes an extensive overview of a court's broad powers under CPLR 5240, involved a judgment creditor's attempt to compel assignment of the judgment debtor's potential legal malpractice claim against the

judgment debtor's former attorney (and friend). The judgment debtor opposed having the claim turned over to the judgment creditor; and instead wanted it transferred to the sheriff, in the hopes that the judgment debtor could raise sufficient funds to buy it himself at auction.

Recognizing that CPLR 5240 grants a court " 'substantial authority to order equitable relief,' " and finding that the equities favored delivery of the malpractice claim to the judgment creditor--in light of the judgment debtor's ongoing attempts to frustrate the judgment creditor's enforcement efforts--the court ordered the assignment.

### 2018

### C5225:5 Special Proceeding Against Third Person

In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 883 N.Y.S.2d 763 (June 4, 2009; 4-3 decision), a divided Court of Appeals held that if a New York court has personal jurisdiction over a garnishee, it can even require delivery of property in the garnishee's custody that is located outside the state. The court subsequently declined to expand the scope of CPLR 5225(b) to apply to property that is not in the actual "possession or custody" of the garnishee. CPLR 5225(b) is unavailable, for example, if the property is merely in the custody of a subsidiary of the garnishee. *Commonwealth of Northern Mariana Islands v. Canadian Imperial Bank of Commerce,* 21 N.Y.3d 55, 967 N.Y.S.2d 876 (April 30, 2013).

*IMAX Corporation v. The Essel Group, et al.*, 154 A.D.3d 464 (1st Dept. 2017) is a reminder that a proper garnishee also must be one that New York courts have jurisdiction over. In *IMAX*, the petitioner sought an order pursuant to CPLR 5201 and 5225(b) directing the respondents to deliver funds or property sufficient to satisfy a judgment against a judgment debtor. The judgment was the result of an arbitration proceeding; and the petitioner claimed that the respondents had fraudulently acted to demerge the judgment debtor and transfer its assets into other corporate entities, including the corporate respondents.

Whatever the merits of the petitioner's claims of fraud, the Court determined that the situs of the demerger event that caused the economic injury was India--and that New York lacked a sufficient basis to assert jurisdiction over the individual and corporate respondents. Without such jurisdiction, there could simply be no delivery order here in New York.

### 2016

### C5225:1 Delivery or "Turn-Over" Direction.

CPLR 5225 allows a judgment creditor to seek an order directing the payment of money or delivery of property in which the judgment debtor "has an interest." Where the property is in the possession of the judgment debtor a mere motion can be made; where the property is in the possession of a third-party, a special proceeding is required.

What if a third-party disputes that the property belongs to the judgment debtor? The third-party is entitled to intervene to have the factual issue resolved. An example is *Pensmore Investments, LLC v. Gruppo, Levy & Co. et al.* (137 A.D.3d 558 [1st Dept. 2016]).

In that case, a judgment creditor had sought to have turned over alleged property of a judgment debtor that was located in one of the judgment debtor's former marital residences. The judgment creditor made its application by motion.

Because the judgment debtor was not in actual possession of the property, the Appellate Division concluded that the application should have been brought as a special proceeding. That error could have been cured by allowing the estranged wife's motion to intervene, "so long as the burden of proof remained on the judgment creditor ... to establish that the judgment debtor" had a superior interest in the property. Either way, however, a hearing was held to be necessary. As such the turnover order issued by the Supreme Court was vacated, and the matter remanded for further proceedings.

## 2015

### C5225:1 Delivery or "Turn-Over" Direction

CPLR 5225 contains the device used by the judgment creditor when it can be established that the judgment debtor or a garnishee has possession of money or property that can be used to satisfy the judgment. *Petrocelli v. Petrocelli Electric Co, Inc.*, 121 A.D.3d 596, 995 N.Y.S.2d 5521 (1st Dept. 2014) is a reminder that the "burden of proof in a turnover proceeding rests with the judgment creditor." The case also notes that a judgment creditor "is entitled to broad discovery to assist in prosecuting the claims."

### C5225:5 Special Proceeding Against Third Person

A recent treatment of CPLR 5225(b)--by a federal court applying New York law--is offered in *MWH International, Inc. v. Inversora Murten, S.A.*, 2015 WL 728097 (S.D.N.Y. 2015). In that case, the Southern District reviews the analysis the Second Circuit applies in considering a CPLR 5225(b) application:

First it must be shown that the judgment debtor "has an interest" in the property the creditor seeks to reach. Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either the judgment debtor is "entitled to the possession of such property," or it must find that "the judgment creditor's rights to the property are superior" to those of the party in whose possession it is. Only after both steps of the analysis are demonstrated may the trial court order the transferee to turn over the property to the judgment creditor.

### C5225:7 Use of Proceeding Against Transferee

Under this caption in the main volume is a discussion of fraudulent conveyances under Article 10 of the New York State Debtor and Creditors Law. For a review of some distinctions between a turnover proceeding under CPLR 5225(b) and a plenary action under the Debtor and Creditor Law, see *Mitchell v. Lyons Professional Services, Inc.*, 2015 WL 3653601. The case is also addressed in commentary C5201:9 on CPLR 5201.

## PRACTICE COMMENTARIES

by Richard C. Reilly

*Mr. Reilly notes that Commentaries for this section were previously prepared by Professor David Siegel. See the Preface for an explanation of the relationship between Professor Siegel's Commentaries and the present ones.*

*Generally*

### C5225:1. Delivery or "Turn-Over" Direction.

*Subdivision (a)*

**C5225:2. Property or Money in Judgment Debtor's Possession.**

**C5225:3. Motion and Order; Contempt Sanction.**

**C5225:4. Order Gives Priority or "Lien."**

*Subdivision (b)*

**C5225:5. Special Proceeding Against Third Person.**

**C5225:6. Trial of Fact Issue; Jury.**

**C5225:7. Use of Proceeding Against Transferee.**

**C5225:8. Judgment as Priority or "Lien."**

*Subdivision (c)*

**C5225:9. Requiring Document.**

———

*Generally*

**C5225:1. Delivery or "Turn-Over" Direction.**

CPLR 5225 contains the device used by the judgment creditor when it can be established that the judgment debtor or garnishee has possession of money or property subject to application to the judgment. It is especially helpful when the judgment debtor is keeping the money or property at a place where a sheriff cannot lay hands on it with a levy on an execution, or where the garnishee fails to honor the execution.

The primary burden of the judgment creditor under CPLR 5225 is one of proof. The court will not direct the judgment debtor to pay over money, for example, unless it has been clearly established that the judgment debtor has money to pay over. Nor will it compel the judgment debtor to deliver property that has not clearly been shown to be in the judgment debtor's possession or control. Useful though this device is, therefore, the judgment creditor must approach it armed with a convincing array of evidence.

The judgment creditor may find it necessary to exploit CPLR 5223 and 5224, the disclosure provisions, in advance of an application under CPLR 5225, deposing the judgment debtor and others about the defendant's property, and/or using an information subpoena under CPLR 5224(a)(3). This enables the creditor to gather up all possible data to convince the court that the judgment debtor has money or property applicable to the judgment.

Herein lies the drawback of CPLR 5225, however, and of the other so-called "supplementary proceedings," i.e., the enforcement devices other than the executions. They often put the judgment creditor to the time, trouble, and expense of gathering evidence; and thus offer a practical benefit only in connection with substantial judgments, or wealthy judgment creditors.

Finally, as detailed below, CPLR 5225 distinguishes between the judgment debtor and third persons. Against the debtor, the judgment creditor's procedure is a mere motion. It is governed by subdivision (a). Against a third person-- garnishee or transferee--the judgment creditor's procedure is a special proceeding, governed by subdivision (b). The latter overlaps somewhat with CPLR 5227, and the attorney who finds it difficult to pick which one applies in a given case would do well to predicate the proceeding on both. They are similar enough in procedure to make this feasible.

*Subdivision (a)*

**C5225:2. Property or Money in Judgment Debtor's Possession.**

When the property or money being pursued is in the possession or custody of the judgment debtor himself, subdivision (a) governs. "Property" here includes all tangible personal property not exempt from application to the judgment.

Note also that although the caption of subdivision (a) refers only to "property," its content includes money as well. Thus, if it is shown to the court's satisfaction that the defendant has money with which to pay the judgment, the judgment creditor can move under subdivision (a) for an order directing the judgment debtor to pay so much of the money as will satisfy the judgment. As long as the judgment creditor has the needed evidence in hand--one example would be affidavits or depositions showing a recent payment of money to the defendant in a large sum--the motion may do the job.

CPLR 5225(a) can even be used where the judgment debtor is in the state but the property the judgment debtor controls is outside. *Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, 41 A.D.3d 25, 836 N.Y.S.2d 4 (2007). If the judgment debtor has control of the property, wherever it is, and the court has personal jurisdiction over the judgment debtor, the court can compel the judgment debtor to deliver that property. Appropriate to note here by analogy is also the 2006 amendment that added a subdivision (a-1) to CPLR 5224, explicitly allowing the securing of out-of-state materials by in-state service of a subpoena duces tecum on the party controlling the materials, even if the materials themselves are outside the state.

If the money is not in the judgment debtor's physical possession but nevertheless located in the state, and would be reachable with an execution, the judgment creditor is probably better off using an execution and advising the sheriff of where the money is. The sheriff could then either seize it, CPLR 5232(b), or levy by delivering a copy of the execution to the garnishee who has control of it, CPLR 5232(a). But if the money is apparently being held by the judgment debtor in his home, where it is impracticable if not unlawful for the sheriff to try to reach it with an execution, a motion under CPLR 5225(a) can become the more appropriate remedy.

If property rather than money is involved, it may again prove more expeditious to use an execution and have the sheriff levy, but in this instance, too, it will be possible only if the property is accessible to the sheriff. If the property is at a place where the sheriff can merely seize it, whether or not technically in the custody or possession of the judgment debtor, an execution will work. The same is true if the property is in the control of some third person, a garnishee, on whom the sheriff need merely serve the execution. But if the property is in the judgment debtor's possession and physically inaccessible to the sheriff for the purpose of a levy, CPLR 5225 (a) is again the remedy. Examples would be where it can be satisfactorily established that the defendant has such property, but that he is keeping it in his home or has secreted it elsewhere.

All non-exempt personal property is included. That could embrace, today, even the judgment debtor's shares in a cooperative apartment, which have been held to be personal property for lien purposes, see Commentary C5201:11, and should perhaps be treated as such for purposes of seizure and levy as well.

A distinction when property rather than money is involved is that even if the CPLR 5225(a) motion succeeds, and the judgment debtor surrenders the property, it will have to be sold and thereby converted into money to pay the judgment. CPLR 5225(a) therefore requires that property reached through its procedures be delivered to the sheriff, who will then sell the property by the same method used when the sheriff comes into the possession of property through the levy of an execution. See CPLR 5233.

If a receiver has been appointed, the delivery of the property is to be made to the receiver rather than to the sheriff, CPLR 5228, and it is the receiver who is to sell it. See Commentaries on CPLR 5228.

### C5225:3. Motion and Order; Contempt Sanction.

When the person against whom an application under CPLR 5225 is made is the judgment debtor, the procedure is a mere motion. No special proceeding or other independent application is necessary. The motion is deemed to arise out of the action that produced the judgment and should in most instances bear the caption of that action and court. (Since a CPLR 5225 application is one of the enforcement proceedings governed by CPLR 5221, however, it is restricted to the courts listed in that provision. This means that with the judgments of the town and village courts, for example, the motion must be made in the supreme court or a county court in a county specified in CPLR 5221, instead of in the court that rendered the judgment.)

The motion must be on notice to the judgment debtor, but because of the post-judgment stage of its making it is required that the notice of motion be served either in the same manner as a summons or by registered or certified mail with return receipt requested. In this instance certified mail will usually be found just as effective as registered mail, and less expensive. If the method of summons service is used, CPLR 308 governs if the defendant is a natural person, CPLR 311 if a corporation, and so forth.

The order to which the motion gives rise, if it directs the delivery of property or the payment over of money and is disobeyed, is enforcible by contempt. See CPLR 5251. See, also, Siegel, New York Practice, 5th Ed., § 510.

### C5225:4. Order Gives Priority or "Lien."

An order under CPLR 5225(a) directing the judgment debtor to deliver designated property to a sheriff gives the judgment creditor a "lien" on the personal property or, more accurately, a priority against other judgment creditors in respect of that property. The priority attaches as of the time the order is filed. See CPLR 5234(c).

Practitioners may note that it can take time to bring the motion on, and more time still before the court decides the motion, and during this time the judgment creditor will not have a priority. This will enable another judgment creditor to achieve priority in the interim, under the terms of CPLR 5234(c), such as by merely delivering an execution to the sheriff and having the sheriff levy it, which the sheriff can do either by seizing the property in some instances or by merely delivering a copy of the execution to the garnishee (the person who has possession of the property) in other instances. The practitioner should therefore consider whether an execution and levy is feasible--even though a CPLR 5225 application may eventually become necessary to wrest the property--simply because of the priority the execution secures.

If an order under CPLR 5225(a) is granted and difficulty arises in having the judgment debtor deliver the property or pay the debt within the 60-day period following the filing of the order, as contemplated by CPLR 5234(c), the judgment creditor should consider asking the court to include in the order a provision making the 60-day provision inapplicable. The 60-day period of CPLR 5234(c) is a limitation on the order as a lien, but it also permits the court to dispense with the time limit. See Commentary C5234:4 on CPLR 5234.

*Subdivision (b)*

### C5225:5. Special Proceeding Against Third Person.

When the person who has possession or control of the money or property is not the judgment debtor, subdivision (b) rather than subdivision (a) governs and the application takes the form of a special proceeding instead of a motion. This recognizes that jurisdiction has yet to be obtained over the third person. (The special proceeding is an independent application, bearing its own caption, in contrast with the mere motion status given to the application when it is made against the judgment debtor under subdivision [a].)

The proceeding is governed by Article 4 of the CPLR, which contains what little procedural direction is needed. It can be commenced by notice of petition, with the petition served in the same manner as a summons. CPLR 403(c). But it can also be brought on by order to show cause instead, as is true of special proceedings generally. See CPLR 403(d).

Notice of the proceeding must be given to the judgment debtor, although she need not be formally designated a respondent. This notice may also be served in the same manner as a summons, but the judgment creditor has the alternative of serving it by registered or certified mail with return receipt requested. The judgment debtor can then intervene in the proceeding if she wishes, and should if her interest in the property or money is disputed. In fact, any person claiming an interest in the property or money may intervene.

The intervention of other claimants converts the proceeding into a plenary test of who has the highest right to the disputed money or property. This is what is meant by the reference to CPLR 5239. See the Commentaries on CPLR 5239.

The special proceeding falls under CPLR 5221(a), which means that it may be brought only in the courts specified in that provision. This means that the special proceeding of subdivision (b) of CPLR 5225 must be brought in a higher court when a judgment of a town or village court is involved, or in a county other than that in which the judgment was rendered if the county of rendition lacks the contacts stipulated by CPLR 5221(a). Should there be several respondents with contacts in different counties, a county proper as to any respondent should be proper as to all of them, subject to the court's power to change the venue. See Commentary C5221:3 on CPLR 5221.

In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825 (2009; 4-3 decision), a divided Court of Appeals held that if a New York court has personal jurisdiction over a garnishee, it can even require delivery of property in the garnishee's custody that is located outside the state. The court subsequently declined to expand the scope of CPLR 5225(b), however, to apply to property that is not in the actual "possession or custody" of the garnishee. As a result, CPLR 5225(b) is unavailable if the property is merely in the custody of a subsidiary of the garnishee. *Commonwealth of Northern Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 967 N.Y.S.2d 876, 990 N.E.2d 114 (2013).

It would be different if "control" were also part of the quoted phrase, the court determined. In that instance a showing that the garnishee had "control" of the subsidiary as a practical matter would enable the court to direct the garnishee to require its subsidiary to turn over in New York property it holds elsewhere. ("Control" was in fact part of the language of the predecessor statute, the court pointed out, which was § 796 of the old Civil Practice Act. When the CPLR was adopted in 1963 and CPLR 5225[b] replaced § 796, the "control" was dropped.) The court concluded that the omission of "control" from 5225(b) is an indication that "possession or custody" requires actual possession.

(The court also noted that when the Legislature has intended to include mere "control" in similar situations, it has done so explicitly, citing as a prime example CPLR 3111 in dealing with deponents. CPLR 3111 provides for the discovery

of "books, papers and other things in possession, custody or control" of the deponent, which enables the court to make the deponent produce papers and things it holds outside the state. Hence the court reached the conclusion that the Legislature considered "control" and "custody" to refer to distinct concepts.)

The court distinguished its precedent in *Koehler*, saying that decision did not interpret the meaning of the phrase "possession or custody," and is only significant in holding that personal jurisdiction is the linchpin of authority under 5225(b).

If a proceeding pursuant to CPLR 5221(b) succeeds, and involves money, the respondent will be directed to pay enough of it to the judgment creditor to satisfy the judgment. If it involves tangible personalty, the direction to the respondent will be to turn over to the sheriff sufficient of the property to satisfy the judgment. The sheriff will then sell the property pursuant to CPLR 5233. If a receiver has been appointed in the case under CPLR 5228, the property is delivered to the receiver instead of the sheriff, and the receiver sells it. See the Commentaries on CPLR 5228.

When "money" rather than "property" is involved, CPLR 5225(b) will also sometimes be found to overlap CPLR 5227. The latter applies when the third person (garnishee) is or will be "indebted" to the judgment debtor; CPLR 5225(b) applies when the garnishee has "money" of the judgment debtor. If the dividing line in a given case becomes too fine to distinguish, the judgment creditor need merely base the proceeding on both provisions. They are close in both function and procedure. If the garnishee concedes the debt, presumably CPLR 5225(b) applies. If the garnishee disputes it, presumably CPLR 5227 governs.

Even bringing the "wrong" proceeding would appear to be a disregardable irregularity.

Finally, practitioners may note that the special proceeding culminates in a judgment, CPLR 411, and the judgment runs directly against the respondent and may then be enforced against the respondent like a judgment rendered in a plenary money action. If the judgment specifically directs the respondent, such as a garnishee, to deliver designated property to the sheriff, and the respondent disobeys the direction, the respondent should be subject to punishment for contempt. But the authority for that conclusion is not likely to be CPLR 5251, which invokes the contempt punishment only for an "order" granted under Article 52, not for a judgment. It is more likely to be CPLR 5104, which governs equity judgments in general.

### C5225:6. Trial of Fact Issue; Jury.

A special proceeding under CPLR 5225(b) is plenary. This means that any issue of fact arising in the proceeding can be tried and adjudicated in the proceeding itself. A separate plenary action need not be commenced to resolve the dispute. See, e.g., *Ruvolo v. Long Island Railroad Co.*, 45 Misc.2d 136, 256 N.Y.S.2d 279 (Sup.Ct., Queens County, 1965).

A nicer question is whether trial by jury is required. Suppose, for example, that the judgment creditor (JC) brings a special proceeding against the garnishee (G) to make the latter pay over a sum of money allegedly owed by G to the judgment debtor (JD). In that proceeding G disputes that he owes the debt to JD. If there is a genuine issue of whether G owes JD the money, and G wants the issue tried by jury, G is entitled to it. As to G, the proceeding is the equivalent of a money action brought by JD; JD's creditor, JC, merely stands in JD's shoes.

If G does not demand a jury, however, it would appear that JC cannot insist on one. The context of JC's standing in the proceeding makes it the equivalent of the old creditor's bill in equity, or in any event analogizes to where a plaintiff seeks both equitable and legal relief in respect of the same claim in the same action, which results in a waiver by the plaintiff but not by the defendant. See CPLR 4102(c); *Leedpak, Inc. v. Julian*, 78 Misc.2d 519, 356 N.Y.S.2d 1011 (Sup.Ct., N.Y. County, 1974). JC in that situation is seeking legal relief insofar as he wants an adjudication of whether

G owes a money debt, and equitable relief in that he wants the debt, if found due, to be paid not to the creditor (JD), but to the creditor's creditor (JC).

It is important, for G's sake, that the judgment debtor be made a party to the special proceeding if G disputes the debt. If JD is not joined, and G prevails, the victory will not avail G as against JD, who can afterwards sue G for the debt unbound by the judgment in the special proceeding. G's remedy is to interplead JD in the event that JC does not formally join JD as a respondent and if JD does not intervene in the proceeding voluntarily. The interpleader, which in this instance would be defensive interpleader under CPLR 1006(b), would require leave of court. See CPLR 401.

The same conclusions apply when some other person, X, claims that the money is owed to her rather than to JD. G should see to it that X is made a party to the special proceeding so that any adjudication to the effect that G owes the money to JD will be binding as well on X. In this example, in fact, G must assure that both JD and X are made parties, so as to guard against all contingencies.


## C5225:7. Use of Proceeding Against Transferee.

A judgment creditor can make use of the special proceeding offered by CPLR 5225(b) not only against a garnishee, but against a transferee as well. Assuming that the judgment creditor has a higher right in the subject property than the transferee has, or contends that he has, the proceeding can be used to test the issue. Substantively, the rights of judgment creditors as against transferees in the judgment debtor's personal property are governed by CPLR 5202. See Commentaries on the latter.

This express authorization to use CPLR 5225(b) against transferees means that it may be the means to set aside fraudulent transfers made by the judgment debtor to defraud creditors. This once required a separate plenary action. No longer. See *Siemens & Halske, GmbH. v. Gres*, 32 A.D.2d 624, 299 N.Y.S.2d 908 (1st Dept. 1969). The judgment creditor should join all of the alleged transferees in the proceeding, and can make the judgment debtor a respondent as well. Although CPLR 5225(b) requires that the judgment debtor be notified of the proceeding, it does not require him to be made a party. Nor does it preclude such joinder.

The subject of fraudulent conveyances is governed by Article 10 of the Debtor and Creditor Law. Of special interest to the judgment creditor is § 273-a of that law, which provides that the mere pendency of a money action against a person makes any gratuitous transfer of property by that person fraudulent against the plaintiff should the plaintiff win the case.

Suppose that in a special proceeding by the judgment creditor against the transferee of the judgment debtor, it is shown that the transfer was wrongful, and the transferee implicated in the wrong, but that the assets have been spent, or squandered, or secreted, and are not around to be returned. May a money judgment in favor of the plaintiff be granted directly against the transferee (as well as against the transferor)? A "yes" answer is given in *Federal Dep. Ins. Corp. v. Heilbrun*, 167 A.D.2d 294, 562 N.Y.S.2d 35 (1st Dept. 1990). This can all be done in the CPLR 5225 proceeding.

The main benefit here, since the same kind of relief has always been available in the form of a separate plenary action, is that the facile device of the special proceeding is being made available to do the job, avoiding the usual delays of the conventional action.


## C5225:8. Judgment as Priority or "Lien."

Commentary C5225:4, above, notes that an order under subdivision (a) of CPLR 5225, directing the judgment debtor to turn designated property over to the sheriff, gives the judgment creditor a priority in that property as of the filing

of the order. This is the doing of CPLR 5234(c), but only for an "order," while a special proceeding under CPLR 5225(b) culminates in a "judgment," CPLR 411, not an order. If a judgment is rendered under CPLR 5225(b) directing a respondent garnishee or transferee to turn designated property over to the sheriff, the judgment should be deemed the same as an "order" for the purpose of allowing it to obtain a priority or lien under CPLR 5234(c). Under prior law a special proceeding ended in a "final order," and the fact that a special proceeding was projected to end in a "judgment" under the CPLR was apparently overlooked when CPLR 5234 was put together in 5th Rep.Leg.Doc. (1961) No. 15, pp. 635-7.

Assuming that the judgment qualifies as an order under CPLR 5234(c), the latter's 60-day period should also be kept in mind. It provides that the order's lien effect will end 60 days after the order is filed if the property or debt is not turned over or paid within that time. But it permits the order, when initially granted, to make the 60-day period inapplicable, or to extend it. If good reason exists for such an extension, such as that a debt required to be paid by the garnishee will not fall due until more than 60 days after the anticipated filing date of the order, the judgment creditor should ask that such a provision be included in the order (or judgment). See Commentary C5234:4 on CPLR 5234.

*Subdivision (c)*

### C5225:9. Requiring Document.

It may take some kind of document to effectuate a payment of money or a delivery of property directed by the court pursuant to either subdivision (a) or (b) of CPLR 5225. Subdivision (c) permits the court to require the execution or delivery of any such document. The property may be in a warehouse, for example, evidenced by a warehouse receipt in the possession of the judgment debtor. The court may direct the judgment debtor to deliver the receipt to the sheriff, and to sign, negotiate, or otherwise deal with it so as to facilitate the sheriff's taking possession of the property.

A judgment rendered under subdivision (b) may also direct parties other than the judgment debtor to execute and deliver documents necessary to effectuate a delivery of property or payment of money.

A direction in respect of a document under subdivision (c) should be enforcible through the contempt device. If the direction is contained in an order under subdivision (a), it would be able to rely on CPLR 5251 for the contempt penalty. CPLR 5251 does not apply to a judgment, however, in which a special proceeding under subdivision (b) culminates. Nonetheless, a judgment directing the respondent, whether garnishee or transferee, to execute or deliver a document amounts to a mandatory injunction and should be able to invoke contempt through CPLR 5104, which makes the contempt device available for equity judgments in general.

### LEGISLATIVE STUDIES AND REPORTS

The Third Report to the Legislature makes the following comments concerning the provisions of this section.

This section is based upon § 796 of the civil practice act which provides for payment and delivery orders in supplementary proceedings. Section 796 limits the evidence which may be presented on the motion to that appearing "from the examination or testimony taken in a special proceeding authorized by this article."

There is no apparent reason for confining the admissible evidence in this manner, and this section does not so limit the source of the court's information. The judgment creditor may have acquired evidence independently and he should be permitted to introduce it.

Although § 796 contains no limitations with regard to personal property of the judgment debtor in his own possession or control, the section is applicable only to such property in the possession or control of a garnishee that is "capable of delivery" and the judgment debtor's "right to the possession whereof is not substantially disputed."

The "capable of delivery" condition has been omitted; although the court cannot order "delivery" of property incapable of delivery--i.e., intangible property--it can order assignment or transfer under subd. (c). Moreover, under CPLR § 5201(c)(4) and C.P.A. §§ 687 and 916, intangible property represented by an instrument or certificate, such as corporate stock, is treated as property capable of delivery.

The second condition in § 796 has also been omitted. If the judgment debtor's right to possession is disputed, the issue can be determined upon the motion or proceeding or in accordance with § 5239. See notes to § 5239.

Section 796 expressly provides that the granting of the order is discretionary with the court. It is interesting to note that § 794, dealing with orders against a debtor of the judgment debtor provides for both a mandatory order directing payment of the indebtedness to the judgment creditor, in which case the court "must grant" the order if the required showing is made, and a discretionary order permitting such payment, in which case the court "may" grant the order. If the judgment debtor is entitled to the property or payment, it would appear that the order should be granted, and §§ 5225 and 5227 so provide.

Section 796 apparently requires payment of money as well as delivery of other property to the sheriff. Since a sheriff's sale is not required where only money is involved, there is no reason for requiring payment of money to the sheriff. Indeed, §§ 793 and 794 of the civil practice act provide for payments of money directly to the judgment creditor.

The section provides that if the person against whom the order is sought has both money and other property of the judgment debtor, the other property should not be delivered unless the money is insufficient to satisfy the judgment. This provision is designed to avoid loss to the judgment debtor by reason of the expenses of, and the distress price which may be received at, a sheriff's sale and to expedite collection by the creditor. It is anticipated that the court in determining which of several types of property should be turned over, after any money available is exhausted, will prefer the more liquid and more easily valued and marketable properties.

Subd. (c) is partly new; it is designed to make it clear that the court can implement a payment or delivery order by directing execution of documents. To the extent that it requires "delivery" of documents, it replaces the second sentence of § 687-a(6) and part of the second sentence of § 795.

Under the section, the judgment creditor proceeds by motion against the judgment debtor or by special proceeding against third parties. The motion provisions of article 22 and special proceeding provisions of article 4 are applicable, except insofar as they are inconsistent with provisions of this article. Failure of the judgment debtor to obey the resulting order is punishable as contempt; a judgment obtained against a garnishee is enforceable in the same way as any other judgment. See § 5251. The proceeding is brought in a court specified in § 5221(a). The motion is made, in a court in which a proceeding could be brought under § 5221(b).

Although a proceeding need not be instituted against a judgment debtor in order to secure an order that he turn over property, subd. (a) requires service of the notice of motion in a way calculated to insure his actually being notified. Similar requirements are made for service of a restraining notice under § 5222(a), and service of a notice of motion for an installment order under § 5226.

Section 796 also permits payment or delivery to a receiver, if one has been appointed. This aspect of such section is treated in § 5228(a).

The provision in subd. (b) limiting costs where the respondent does not contest the proceeding is adapted from the last sentence of § 687-a(6), and part of the last sentence of § 795; both of these sections relate to an action against a debtor of the judgment debtor. The remainder of the last sentence of § 795, providing that the "action ... shall make the judgment debtor a party defendant," has also been included in the last two sentences of subd. (b). See, also, § 5227.

The Sixth Report indicates that subds. (a) and (b) are also based in part on part of first sentence of § 1189 of the civil practice act and that the last sentence has been added to subd. (b) to indicate that it is intended that the rights of all claimants can be determined on this proceeding. The sentence clarifies that the provision changes present law which requires a plenary action to determine rights.

Official Reports to Legislature for this section:

3rd Report Leg.Doc. (1959) No. 17, p. 266.

5th Report Leg.Doc. (1961) No. 15, p. 615.

6th Report Leg.Doc. (1962) No. 8, p. 484.


Notes of Decisions (214)

McKinney's CPLR § 5225, NY CPLR § 5225
Current through L.2023, chapters 1 to 682. Some statute sections may be more current, see credits for details.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**Addendum B**

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1367

§ 1367. Supplemental jurisdiction

Currentness

**(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**(b)** In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

**(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

**(1)** the claim raises a novel or complex issue of State law,

**(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

**(3)** the district court has dismissed all claims over which it has original jurisdiction, or

**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**(d)** The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

**(e)** As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**CREDIT(S)**

(Added Pub.L. 101-650, Title III, § 310(a), Dec. 1, 1990, 104 Stat. 5113.)

28 U.S.C.A. § 1367, 28 USCA § 1367
Current through P.L. 118-22. Some statute sections may be more current, see credits for details.

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.